# GLAZIER v. CRAM.

No. 4606.   Decided April 17, 1928.   (267 P. 188.)

S. D. *Huffaker,* N. G. *Morgan,* and J. H. *McKnight,* all of Salt Lake City, for appellant.

*Woolley & Holther,* of Ogden, for respondent.

THURMAN, C. J.

This is an action for slander and defamation of character. Plaintiff prays judgment for damages in the sum of $10,000. He alleges that defendant, in the month of October, 1922, and prior thereto on divers occasions in Kane county, Utah, falsely stated to numerous people, naming them, that plaintiff had committed adultery with a certain female mentioned in the complaint.

Defendant answers the complaint, and denies making the slanderous and defamatory statements as alleged in the complaint, but affirmatively alleges that the plaintiff did

commit the act of adultery with the female mentioned, and especially on a certain date, to wit, September 8, 1922. Defendant alleges that whatever statements he made concerning the plaintiff as to such matters were made without malice, and that such matter was currently reported and discussed publicly in the town of Kanab, Kane county, where plaintiff resided.

The case was tried to a jury. Verdict was rendered for defendant, and judgment entered. Motion for a new trial was denied, and plaintiff appeals.

The only error assigned is the denial of plaintiff's motion for a new trial. The motion alleged misconduct of the jury by which plaintiff was prevented from having a fair and impartial trial.

The evidence without conflict tends to show that plaintiff was engaged in the mercantile business in Kanab; was a man of high standing in the community, had been school trustee, justice of the peace, bishop of a ward, and member of the high council of the Mormon Church. The evidence also tends to prove that, on account of the matters alleged in the complaint and the reports concerning plaintiff in the community relating to such matters, plaintiff lost his fellowship in the church, and sustained damage to his business and reputation.

The proof was clear that the defendant made the statements charged in the complaint to divers people in the community. It appears, however, that he only stated what had been communicated to him by two persons who claimed to have been eyewitnesses to the alleged act of adultery. Of these two witnesses only one was available at the trial; the other was dead.

Arthur Johnson, sworn as a witness for defendant, testified, in substance, that on the evening of September 8, 1922, he and James Sorenson saw plaintiff go up on the hill not far from the woman's house. They followed later, and saw plaintiff and the woman lying down together

in the brush. The evidence tends to show that they were in a compromising position. The evidence was sufficient to justify the inference that sexual intercourse had been, or was being, committed.

Other evidence was introduced to the effect that the woman had been seen going into the plaintiff's store after hours, and also that plaintiff had visited her home when she was there alone. Johnson's testimony, however, was the only substantial evidence in the case to prove the matter alleged in defendant's affirmative defense. Without his testimony, the plaintiff would have been entitled to a verdict as matter of law. The testimony of Johnson and all evidence tending to show that plaintiff had had illicit intercourse with the woman in question was flatly contradicted by the testimony of the plaintiff.

The plaintiff filed four affidavits in support of his charge of misconduct of the jury. As the affidavits are brief we quote them at length:

"John W. Glazier, Jr., being first duly sworn on oath, deposes and says that he is informed and believes, and has proper cause for believing, that Griff Griffeth, one of the jurors in the case of *John W. Glazier, Plaintiff,* v. *John Cram, defendant,* during the time that he was sitting as said juryman, and after the adjournment of the court, and before the case had been finally submitted to him, expressed to one Stanley Glover his opinion of the case; and that he talked with the said Griff Griffeth prior to the time the case was finally submitted to the jury and after the taking of the testimony had begun. That I, talked with one of the jury; to wit, Marrion Jolly, one of the jurors in the same case, and he informed me that he did not agree with the verdict rendered, but, that he could not oppose it any longer, for the reason that he was compelled to get out in order to urinate, and that he could not hold his water on account of being injured in the mines."

"James W. Swapp, being first duly sworn on oath, deposes and says: I was in the pool hall, and that Griffeth, one of the jurors in the case of *John W. Glazier* v. *John Cram,* and John Reese, one of the jurors during the progress of the trial, was in the pool hall, and Arthur Johnson, the chief witness for the defendant, told me

that they were going to sleep there back of the pool hall; that he had an extra bed. The last night Griff Griffeth asked Arthur Johnson if their bed was still there, and Johnson told him yes. At the closing of the pool hall, the said jurors remained there after the rest had left."

"Orson W. Pratt, being first duly sworn on oath, deposes and says: That I did see Griffeth, one of the jurors in the case of *John W. Glazier* v. *John Cram*, during the progress of the trial, in the pool hall playing pool with Grant Robinson, and I also played four games with Griffeth. And also that during the progress of the trial I saw Griffeth playing pool with Arthur Johnson, chief witness in the case, and the owner of the said pool hall."

"Vernon Glazier, being first duly sworn on oath, deposes and says: The morning after the trial of *John W. Glazier* v. *John Cram* I was talking to Griff Griffeth, one of the jurors in the case, and he told me that a month previous to the case, when they were here Arthur Johnson told him that he (Johnson) was star witness for the case, and that they were going to win. Then I asked him if the jury could believe Arthur Johnson's statement, and he said who could believe such stuff. I am informed and believe, and have proper cause for believing, that during the progress of said trial two of said jurors impaneled to try said case, to wit, Griff Griffeth and John Reese, slept in a bed furnished by Arthur Johnson the chief witness for the defendant."

Much of the matter stated in the affidavits is alleged on information and belief. As to such matter the brief of counsel for defendant calls our attention to ■ the following language in Hayne on New Trial (Rev. Ed.) p. 240:

"Affidavits based upon information and belief are wholly valueless for the purpose of establishing the facts upon which an irregularity of this description is based."

The language quoted is stated in connection with irregularities of the adverse party. But the same rule applies where the motion alleges misconduct of the jury. 1 Spelling, New Trial, p. 306.

It also appears that some of the matter alleged in the affidavits was based on statements made by a juror to

the person making the affidavit. Hayne, supra, at page 361, says:

"The affidavits of jurors are inadmissible to impeach their verdict, except where it was arrived at by a resort to the determination of chance."

Such, it is stated by the author, is the well-settled rule in California. Many California cases are reviewed and carefully considered in connection with the excerpt we have quoted. It would seem to be against public policy to permit jurors to impeach their verdict by statements made concerning their verdict, whether by affidavit or otherwise. It is well known to the profession that, after a verdict is rendered, many jurors, when inquired of by the losing party, are profuse in explanations and apologies, and, if such matter could be relied on as proof of misconduct, it would be an easy matter in most jury cases to obtain a new trial. While, as above stated, most of the matter contained in the affidavits consists of statements made by the jurors themselves, and much of it was on information and belief, the fact remains that none of it was denied by counter affidavits of the jurors, or any one else. There are some matters stated in the affidavits concerning one or two of the jurors which, if true, ought not to have been passed without an explanation. Jurors ought to so conduct themselves as to be above suspicion. Mingling intimately in social contact with prominent witnesses upon whose testimony the case must be determined is not to be commended. In such cases it is probable that a doubt must and will continue to exist in the mind of the losing party and that of his friends as to whether or not he had a fair trial. Such conduct, especially if it involves the acceptance of favors, brings reproach upon the administration of justice, and lessens the confidence of the community in the tribunals whose duty it is to fairly and impartially administer the law. See *State* v. *Anderson,* 65 Utah 415, 237 P. 941, in

which this question is discussed at considerable length and copious quotations made from many authorities.

But in the instant case, aside from the infirmities existing in the affidavits to which we have referred, there is an insuperable objection to considering the affidavits in this case, even if we assume that some of them are meritorious. It is a general rule, subject to few exceptions, that a motion for a new trial upon this ground must be accompanied by affidavits showing that the misconduct complained of was not known to the party moving for a new trial—or his counsel—until after the case was submitted to the jury. In 20 R. C. L. at pages 251, 252, it is said:

"Moreover, even where there has been prejudicial misconduct, if the complaining party participated therein, or, having knowledge thereof, failed to make timely objection, relief by new trial will not be granted, for the reason that a party will not be allowed either to obtain advantage from his own wrong or to remain silent and speculate upon the chances of a verdict. It is accordingly generally held that when a party moves for a new trial on the ground of misconduct on the part of the jury, which took place during the trial, he must aver in his motion and show affirmatively that both he and his counsel were ignorant, until after the jury had retired, of the fact of such misconduct."

In the note to *State* v. *Wilson,* a Washington case reported in 7 Ann. Cas., it said at page 421:

"The rule is well settled that upon a motion for a new trial on the ground of misconduct of the jury it must affirmatively appear that neither the party making the motion nor his counsel had knowledge of the misconduct or acquiesced therein."

Cases are cited by the annotator from nearly half of the states of the Union. Such as we have examined support the rule above quoted. We are of opinion that such, on principle, must and should be the general rule in every jurisdiction of the country. In the quotation from R. C. L., supra, one case is cited as an exception to

the rule. *McDaniels* v. *McDaniels*, 40 Vt. 363, also reported in 94 Am. Dec. at page 408. In that case, however, the appeal was from an order granting a new trial, which presents an altogether different question from an appeal denying the motion. It is universally held, as far as the writer is informed, that the granting or denying a motion for a new trial upon this ground is a matter largely within the discretion of the trial court. Besides this, an examination of the statement of facts in the Vermont case shows that the misconduct complained of in that case was of the most flagrant type, and it might well be an exception to the general rule.

In the instant case, the record does not disclose any disclaimer by either plaintiff or his counsel of notice or knowledge of the matters complained of prior to the submission of the case to the jury. For aught that appears, both plaintiff and his counsel had knowledge of such matters before the case was submitted, and, if such be the case, it ought to have been brought to the attention of the court during the progress of the trial. It is said by the courts, as a reason for the rule, that a party having knowledge, by himself or his counsel, should not be permitted to take his chance of a favorable verdict and afterwards be heard to complain if the verdict is against him.

It is possible that in the case at bar the plaintiff did not have a fair trial. From the record before us, for the reasons already stated we cannot definitely determine that question. All we can say is that wholesome rules of practice, generally recognized by courts through the entire country, should not be disregarded, unless it plainly and unequivocally appears that simple justice demands it.

The judgment is affirmed, with costs.

CHERRY, STRAUP, HANSEN, and GIDEON, JJ., concur.