## STATE v. MOORE.

No. 7015. Decided August 26, 1947. (183 P. 2d 973.)

460

See 22 C. J. S. Criminal Law, Sec. 210. Physical condition or conduct of party, his family, friends, or witnesses during trial, tending to arouse sympathy of jury, as ground for continuance or mistrial, see note 131 A. L. R. 323. See also, 53 Am. Jur. 49. Right of jurors to sustain their verdict by affidavits or testimony to effect that they were not influenced by improper matters which came before them, see note 93 A. L. R. 1449. See, also, 53 Am. Jur. 769.

*Rawlings, Wallace & Black, Wayne L. Black* and *Woodrow D. White,* all of Salt Lake City, for appellant.

*George S. Ballif,* Dist. Atty., of Provo, and *Calvin L. Rampton,* of Salt Lake City, for respondent.

McDONOUGH, Chief Justice.

Appellant was convicted of the crime of rape, and he appeals. He predicates his appeal on the following alleged errors: (1) Denial of motion for change of venue. (2) That the verdict was contrary to the great weight of the evidence and unsupported by sufficient evidence. (3) That the court permitted the prosecutrix to remain in the courtroom, and to exhibit the scars on her legs to the jury. (4) That the court allowed the nurse at the hospital to repeat the statement uttered by the prosecutrix. (5) Misconduct of the jury which prevented a fair and impartial trial. (6) That defendant was prevented from having a fair trial by a combination of all of the alleged errors of which he complains. These assignments of error will be discussed in the order indicated.

The alleged crime was committed in Uintah county near the boundary of Duchesne county. There was some newspaper reports which exaggerated the account, and there were some remarks of certain citizens to the effect that defendant was not entitled to a trial and should ■ be summarily executed. The court conducted a hearing on the motion for change of venue, and concluded that there was not sufficient evidence to warrant a conclusion that there was such bias and prejudice among the citizens of Uintah county that defendant would likely be deprived of a trail by fair and impartial jurors. The defendant has not presented in this court a record which would compel the conclusion that· defendant would be unable to obtain a fair trial. Nor does the record brought here show that he was denied a fair trial. There clearly was no abuse of discretion in denying the motion for change of venue. See *State* v. *Be Bee,* 110 Utah 484, 175 P. 2d 478.

The second proposition to the effect that the verdict was contrary to the great weight of the evidence and also unsupported by sufficient competent evidence, requires us to preface our analysis with a statement of the testimony. That part of the argument which in sub- ■■ stance declares that the account related by defendant is more deserving of belief than the account related by the prosecutrix, in effect is a jury argument, since the jurors are the sole judges of the weight of the evidence and credibility of witnesses. We therefore summarize the evidence presented by the State which we deem sufficient to make out a prima facie case of guilt.

The defendant was an oil field worker in the Unitah basin. He and· his wife were relative strangers in the vicinity of Vernal. On the evening of June 25, 1946, prosecutrix had a date to go to a dance at Victory Park with another oil-field worker. By arrangement subsequently made, they went in defendant's car. Defendant and two of the other young men had some drinks before starting. There was some liquor taken along in defendant's car by two other young men. Defendant took a drink en route, and the

prosecutrix' male companion did some drinking also. However, he claimed he was not drunk but suffering from stomach trouble. Defendant did not become intoxicated. The girl who accompanied the defendant and another couple rode in the front seat, and prosecutrix and her companion rode in the rear seat with others.

Prosecutrix and her companion stayed in the rear seat of the car after they arrived at Victory Park. She stated that she was not feeling well, and that her friend was also indisposed. After a short time they went into the dance and stayed for about an hour. During that time they saw none of the other members of their party. They then returned to the car. At least twice during the evening a young man brought coffee to prosecutrix' companion. Two of the other young men came out several times to drink liquor. One of them got in a scuffle and tore his shirt, then borrowed the coat of the young man who accompanied the prosecutrix.

About 11:00 P. M. defendant came out of the dance and stated that he was ready to go home. The companion of the prosecutrix said he was also ready to leave, but wanted to get his coat. Defendant stated that he would drive his car to a place near the dance hall entrance designated as the "tail-lights" and wait for him. The prosecutrix remained in the back seat. Instead of stopping at the appointed place, defendant drove his car out onto the highway and proceeded towards Vernal at a rapid rate of speed. Prosecutrix, becoming alarmed, climbed over the front seat, stepped on the brake, slowed down the movement of the car, opened the door and jumped out, falling onto the pavement. Fearing that defendant would return, she hid in some weeds along the side of the road momentarily, and then noticing a truck proceeding west, she ran out onto the left side of the road in the same direction as the truck was moving. As the truck approached a hill the driver saw prosecutrix running and asked her if she wanted to ride. As she tried to jump onto the running board of the truck, defendant drove up at a rapid rate of speed, almost hitting the prosecutrix. He then started to weave his car in front of the truck and

forced it to stop. Defendant came back to the truck and asked if a girl was in the truck. One of the truckers asked if she was his wife. When told that she did not care to accompany him, defendant struck one of the drivers. The driver of the truck then interceded and struck defendant a blow which knocked the latter to the pavement. Defendant pulled out a knife and declared that he would disembowel them. One of the truckers then took out his own knife. Both truckers were in poor physical condition, one having an arm in a sling, and the other having just been released from a hospital.

When the prosecutrix heard one of the truckers remark that they were in a poor condition to fight, she stated that she would go with defendant if he would take her back to Victory Park. Defendant promised to do so and apologized to the truckers. Prosecutrix got into his car, and defendant drove rapidly away. One of the truckers wrote down the license number of defendant's car. Although the lights at Victory Park were visible from the highway, defendant failed to stop at Victory Park. Prosecutrix screamed and demanded that he stop as he drove on past. He stated that there was no room to turn around, and he continued westerly along the highway until he reached the Ballard school, where he turned into a side road. As he did so, prosecutrix put her foot on the brake, opened the door and attempted to jump out. She fell into a depression along the side-road. Defendant stopped his car within a few feet. In consequence of such fall, prosecutrix suffered injuries to her legs, hips and feet, and experienced intense pain. At first she believed her legs were broken. She testified that while lying on the ground where she fell, defendant ravished her, notwithstanding she pleaded with him to desist, told him she was badly hurt, and scratched his face. Defendant persisted until he had accomplished an act of sexual intercourse.

When she discovered that she was able to get up unassisted, she learned that her legs were not broken, but injured and bleeding badly. Defendant gave her his handkerchief to wrap around her left leg to stop the bleeding.

She lost a slipper, so defendant handed her a flashlight to find it. It was lying near the car. She got back into the car. Defendant turned his car around and started easterly along the highway. When he had proceeded about a half mile he was overtaken by a state highway patrolman and the Roosevelt night marshal to whom the truckers had reported the knife incident. The truckers had seen defendant's car with the lights burning, parked on the side road as they passed the Ballard school on their way into Roosevelt. The officers saw defendant's car drive away from the side road just before they reached said school.

As soon as the officers stopped defendant's car, prosecutrix got out and ran over to the patrol car. She exclaimed that they should have no mercy on defendant; that he had shown none to her. The officers observed that she was hysterical, and noticeably shaking. She was taken to the Roosevelt hospital. When asked if she had been raped, she replied in the affirmative. At the hospital, severe bruises were noted on her legs, and she was asked if defendant's car had run over her. She said she thought so. The nurse was directed by a doctor to give her a quarter of a grain of morphine because of her hysterical condition, in preparation for treating her injuries. After the hypodermic was administered to quiet her nerves, an officer interrogated her. When her father arrived at the hospital, she immediately declared to him that defendant had raped her.

A vaginal examination disclosed the presence of live sperm cells, which indicated a recent act of sexual intercourse. Some stitches were taken in her left leg and at the knee, and her wounds were dressed. When the physician examined her she was suffering from shock. After being removed from the hospital she remained in bed for several days. When defendant was taken into custody, the officers observed blood spots on his trousers.

The defendant's case consisted in substance of the following: (1) An attempt to discredit the testimony of the prosecutrix by showing some inconsistencies in her statements made shortly after the alleged attack and in state-

ments made at the trial. (2) The presentation of testimony designed to show that defendant had no sexual intercourse with her, and that no rape occurred. (3) Evidence of circumstances which appellant contends would have made it inherently improbable that he ravished her.

Counsel have stressed failure of the prosecutrix to mention immediately following the alleged attack or at preliminary hearing, certain details disclosed for the first time at the trial. Certain inconsistencies in her accounts at preliminary hearing and at the trial, as well as to location of objects and distances, have been emphasized, particularly variances in certain details. However, the prosecutrix accounted for variances in her testimony, in part at least, by showing that she was hysterical and frightened at the time she first related the events and also that she was extremely nervous and still suffering from fright at the time of the preliminary hearing. Furthermore, we reiterate that the jurors are the sole judges as to the weight of the evidence and the credibility of the witnesses. The account related by prosecutrix, even if the inconsistencies in certain details are taken into consideration, was not inherently improbable as argued by counsel for appellant. The record does not present a case where details related at the preliminary hearing as compared with those related at the trial, would spell the difference between innocence and guilt. Some of the details in question related to time, space, distance, and physical objects along the highway observed at nighttime during moments of fright and excitement. The powers of observation might not be nearly as reliable under such circumstances as under normal conditions. The argument as to such details is principally a jury argument, which cannot be effectively addressed to this court.

The testimony of defendant conflicted with that of the prosecutrix on material matters. He introduced evidence to the effect that prosecutrix remained in the car the entire evening with her boy friend; that at one time when he opened the door of his car he saw her and her boy friend in a very compromising position; that her boy friend

quickly got out of the car and tucked his shirt into his trousers, with his back toward defendant. The defendant attempted to account for the act of sexual intercourse established by medical testimony by showing that prosecutrix likely had such relations with her male companion. Both the prosecutrix and the young man denied that they indulged in any act of sexual intercourse or any other impropriety. The jurors were not compelled to believe any of the testimony of defendant on any material issue wherein it conflicted with that of the State's witnesses. Furthermore, there were certain phases of the testimony of the prosecutrix which were corroborated by defendant's own testimony, although defendant tried to furnish a different explanation; for example the scratches on his face and blood stains on his trousers.

Defendant admitted that the girl who had accompanied him to the dance had refused to dance with him any longer, and that he drove away with the prosecutrix after her escort had gone into the dance hall to get his coat. His explanation was that she requested him to do so. He admitted that she got out of the car a short distance down the road, which would tend to discredit his testimony that she requested him to take her for a ride. While he presented a different version of the highway altercation with the truck drivers and denied that he pulled out any knife he admitted that he promised to take prosecutrix back to Victory Park but that he drove past the place. His own testimony suggests that she was an unwilling guest in his car, since she tried twice to get out of that car.

Contrary to the argument of counsel for appellant, the evidence presented by defendant was not such that reasonable minds would be compelled to acquit the defendant. The defendant presented no evidence in conflict with the testimony of prosecutrix and other state witnesses on any material issue, which reasonable minds would be compelled to believe rather than the testimony of witnesses for the State. There was ample competent evidence to support the conviction.

Counsel for appellant earnestly argue that the court committed prejudicial error in allowing the prosecutrix to sit in the court room with her legs bare, whereby her scars remaining from the injuries she sustained on the night of the alleged attack were continuously visible ■ to the jurors. They also urge that it was prejudicial error to allow the district attorney to exhibit to the jurors the scars on her legs as occular evidence, as tending to excite passion and prejudice on a matter not in issue. However, there was a definite relationship between the injuries she received on the night in question and her lack of consent to the act of sexual intercourse. The scars indicated injuries which evidenced a physical condition of pain and suffering which might have made consent to sexual intercourse highly improbable. There is no evidence that prosecutrix exposed any part of her limbs which would not ordinarily be visible anyway. She was not required to wear hose. If she had suffered grave facial injuries in falling from defendant's car, it could not be urged that she would have had to veil her face while in the court room. The record does not suggest any indecent exposure nor any impropriety on the part of the prosecutrix in the courtroom. This assignment of error based on the alleged improper exhibition of the legs of the prosecutrix without hose, is overruled.

Appellant also claims prejudice by reason of the fact that the court invoked the exclusion rule, but permitted the prosecutrix to remain in the courtroom during the trial when she was not testifying as a witness. Appellant objected to her presence, but the court ruled that she ■ might remain to consult with the district attorney. Inasmuch as the prosecutrix was the complaining witness and had occasion to be available at all times to advise the district attorney as to facts, and for the further reason that she was the first witness called to testify, and that by way of rebuttal she merely categorically denied certain testimony of defense witnesses, the court did not abuse its discretion, and no prejudice resulted.

The court permitted the nurse who attended prosecutrix to testify that while prosecutrix was at the hospital receiving treatment for her injuries, she made the following statement while crying: "I have tried to be good. Why did this happen to me?" Appellant assigns the admission of such testimony as prejudicial error. The remark was uttered while hysterical and in some pain. It was part of her outcry of distress to one who was administering professional aid to her. Prosecutrix did not by such remark accuse the defendant, and even if immaterial or irrelevant, it is difficult to see how appellant could have been thereby prejudiced.

In returning a verdict of guilty of the crime of rape, the jurors added a recommendation of leniency. Appellant contends that he was prevented from having a fair and impartial trial by reason of alleged irregularity and misconduct of the jury. In support of a motion for a new trial, affidavits of 4 jurors were filed, which recite that 4 jurors were in favor of acquital on the first ballot, and that one of the jurors stated that if they found defendant guilty with a recommendation of leniency he would have to serve only a few months in jail; and that they were thereupon persuaded to vote for conviction.

The affidavits do not reveal a state of facts permitting the jurors to impeach their verdict. See State v. Priestley, 97 Utah 158, 91 P. 2d 447 and State v. Rosenberg, 84 Utah 402, 35 P. 2d 1004. In the charge to the jury the court declared:

"You are instructed that the crime of rape and the crime of assault with intent to commit rape, are felonies; that is, a person found guilty of either .of these offenses may be punished by imprisonment in the State Penitentiary."

The court then declared that the crimes of battery and of assault are misdemeanors punishable by jail sentences or by fine. If the jurors did not actually believe that defendant was guilty of rape, as counsel argue on this appeal, and only wanted him to have a short jail sentence, they could have

accomplished such a result by merely finding him guilty of one of the lesser included offenses amounting to a misdemeanor.

The fact that several of the jurors voted for acquittal on the first ballot, if they did so vote, would not preclude them from voting for conviction on a subsequent ballot. The purpose of deliberation of the jury is to enable its members to arrive at a verdict based upon the evidence within the limits of the instructions of the court given for their guidance on propositions of law. The affidavits show no coercion, nor tactics which might have stripped any juror of his ability to act in accordance with his honest convictions. Under the oath administered to the jury, each was bound to return a verdict upon the evidence adduced in court and under the instructions given by the court.

Courts have generally scrutinized every device to impeach a verdict, for the reason that after a verdict is returned, one dissatisfied with it may be tempted to approach members of the jury to account for the verdict rendered, and by persuasion suggest a state of facts which might imply that the jurors did not consider the evidence. Courts examine verdicts objectively in the light of competency, relevancy, and materiality of the evidence, sufficiency of the evidence, and factors which might tend to create prejudice or to mislead a jury. In reviewing records on appeal, we assume, unless the contrary be shown, that qualified jurors have served, and that the verdict returned was in consonance with the oath which they, as jurors, took. The motion for new trial on the alleged ground of misconduct of the jury was properly denied.

Appellant finally asserts that a combination of errors and circumstances operated to deprive him of a fair trial. He admits that the denial of the motion for change of venue, standing alone, might not have been error, but he contends that there were other factors, such as prominence of the family of the prosecutrix in the community and the fact defendant was a stranger, as well

as newspaper accounts referred to, which should be considered. The granting or denial of a motion for change of venue must be predicated upon conditions existing at the time such motion is heard. If the court did not abuse its discretion then, regardless of what might have occurred in the course of the trial proceedings, any such subsequent events could not retroactively operate to make such ruling erroneous. The motion for change of venue was properly denied. If errors occurred at the trial whereby defendant was deprived of a fair trial, he would be by virtue of such errors entitled to a new trial.

The rules of this court require the appellant to make a statement of the errors on which he relies. If none of the alleged errors specified constituted any reversible error, the only way in which a combination could operate to prejudice the defendant would be in a situation where some error standing alone might not be prejudicial, although in combination with some other factors would create prejudice. We fail to find any such combination of errors, or any chain of circumstances which could have deprived defendant of a fair trial.

The judgment is therefore affirmed.

PRATT, WADE, WOLFE, and LATIMER, JJ., concur.