STATE of Utah, Plaintiff and Respondent,

v.

Howard MacDonald DURAND, Defendant and Appellant.

No. 14884.

Supreme Court of Utah.

Sept. 15, 1977.

Patrick H. Fenton, Cedar City, for defendant and appellant.

Vernon B. Romney, Atty. Gen., Earl F. Dorius, Asst. Atty. Gen., Salt Lake City, Hans Q. Chamberlain, Iron County Atty., Cedar City, for plaintiff and respondent.

CROCKETT, Justice:

Defendant Howard MacDonald Durand appeals from his conviction by a jury of second-degree murder [1] for killing Larry Bulloch on the night of July 1, 1976, at Kelley's Trailer Court in downtown Cedar City. He does not deny the killing, but his evidence relates to justification in self-defense, or at least a lesser degree of homicide.

Defendant makes two principal assignments of error: (1) in admitting in evidence the shotgun he used, contending that it was obtained by an unlawful search and seizure;

1. As defined by Section 76–5–203, U.C.A.1953.

and (2) in refusing to grant a new trial on the ground of misconduct of the jury.

It will be noted in the delineation of the facts that certain aspects thereof are known only to the defendant as the survivor. In view of his self-interest, the jury were not obliged to accept his version as "whole cloth" truth, but because it was suffused with self-interest, they could disbelieve whatever portions of it they desired.[2]

At about 3:00 o'clock p. m., on July 1, 1976, the defendant Durand, Larry Bulloch, and Jack Lightner left Cedar City in Durand's car and spent the rest of the day going to St. George, thence to Mesquite, Nevada, thence back to Cedar City in what, sparing detail, can be described as a beer drinking and gambling escapade.

They returned to Cedar City at about 11:00 o'clock p. m. and stopped in the parking lot of the Playhouse Bar in Cedar City. The defendant went in, returned with a case of beer, and put it in the trunk of the car. He went in the bar again to get more beer. When he came back outside a dispute arose. Defendant Durand says that Bulloch grabbed him and pushed him against the building; and that he broke away and ran to his mother's trailer, where he lived, and was inside when Bulloch drove up and stopped in front.

The defendant then loaded his shotgun, walked outside onto the porch, shot the door on the driver's side of the car; and told Bulloch to keep his hands on the wheel and not get out. He says that as he approached the car, Bulloch swung the door open abruptly, attempting to hit him with it. He then stepped back and shot Bullock in the chest as he got out of the car. When Bulloch kept coming at him, the defendant again shot him, this time in the leg. The deceased then got back into the car, slumped over the wheel and expired.

### Alleged Unlawful Search

 Defendant called the police, then hid the shotgun under the trailer home. Within minutes, police Sergeant Harold Bradley arrived and the defendant told him that he had shot Bulloch. The officer asked the defendant's mother if she knew where the defendant's gun might be. As to the next events, the testimony of Mrs. Durand differs from the version given by Sergeant Bradley. She says that she refused the Sergeant's request to allow him to search the defendant's bedroom, but that she looked for the gun and told the Sergeant it was not there. The sergeant testified that he followed Mrs. Durand into the defendant's bedroom and watched as she made the search. They both testified that he asked her where else the gun might be and she responded that it could be on top of the trailer home, in the bushes, or under the home. However, her statement was that she did not consent to a search of any of those areas. Whereas, his was that after he had searched the top of the home and in the bushes she showed him how to get under the trailer home; and that in following her directions he found the defendant's shotgun.

 There is no question about the right of the mother to give a consent to a search of her home, even though the defendant also lived there and had rights of privacy therein,[3] nor of the admissibility of evidence obtained as a result of such a permissive search.[4] It is likewise recognized that the state had the burden of proof that the consent was voluntarily given;[5] and, whether it was given is a question of

---

**2.** That self-interest may discount credibility, see *Jensen v. Logan City*, 96 Utah 522, 88 P.2d 459 (1939); *State v. Simpson*, Utah, 1975, 541 P.2d 1114.

**3.** See *State v. Tuttle*, 16 Utah 2d 288, 399 P.2d 580 (1965) and 68 Am.Jur.2d, Searches and Seizures, Section 49.

**4.** 68 Am.Jur.2d, Searches and Seizures, Section 50; *State v. Smith*, 12 Wash.App. 720, 531 P.2d 843 (1975); *Burkham v. State*, Okl.Cr., 538 P.2d 1121 (1075).

**5.** *State v. Shoemaker*, 85 Wash.2d 207, 533 P.2d 123 (1975); *State v. Bidegain*, 88 N.M. 384, 540 P.2d 864 (1975); *People v. Wieckert*, Colo., 554 P.2d 688 (1976).

fact;[6] to be determined from the totality of the circumstances by the trial court, whose ruling thereon will not be disturbed in the absence of a clear abuse of discretion.[7] In applying those rules there is no basis shown here for overturning the determination made by the trial court. Moreover, inasmuch as the defendant does not deny that he shot Bulloch with a shotgun, we do not perceive how he would have been prejudiced by admitting the gun in evidence.

### Alleged Misconduct of Jury.

█ In accordance with standard and proper practice, the jury was admonished by the trial court not to talk with any of the parties or witnesses about the case. The jury was excluded from the courtroom during the hearing on the motion to suppress the evidence in question. As they were leaving the courtroom, one of the jurors asked the bailiff where they could get some coffee. He directed them to the Sheriff's Office. Three jurors, one of them an alternate, then went into that office to have some coffee and were there for about five minutes. The Sheriff, his office personnel and other police officers were present. A day or two later, during a recess, the trio again went in to get some coffee. On that occasion, Officer Bradley and two other police officers, who were also witnesses, were there. When the court reporter saw the jurors in the Sheriff's Office, he told them they should not be there and they left.

The defendant relies on Section 77–38–3, U.C.A.1953 which provides:

When a verdict or decision has been rendered against the defendant the court may, upon his application, grant a new trial in the following cases only: . . .

(3) When the jury . . . has been guilty of any misconduct by which a fair and due consideration of the cause may have been prevented.

At the hearing on defendant's motion for a new trial, testimony was presented from the officers and the jurors involved in the incidents referred to. All affirmed that there was no conversation about anything pertaining to the case; and the jurors testified that nothing that occurred had had any influence upon their verdict.

█ The right to a trial by a fair and impartial jury is an important one which should be scrupulously safeguarded.[8] This applies not only to actual fairness and impartiality, but any conduct that may seem to give an appearance to the contrary should be avoided. For this reason we do not approve of jurors going into the sheriff's facility for coffee, nor of engaging in even social or casual conversation with the officers who are actively engaged in testifying and prosecuting a case. Nevertheless, our major concern in this, as in any case, is with the lawfulness and justice of a conviction; and notwithstanding a showing of minor impropriety or irregularity, there should be no reversal of a conviction unless it appears that a party has been prejudiced[9] in that in the absence of such impropriety there is a reasonable likelihood that the verdict would have been different. In his rulings during the trial and on the motion for a new trial, the court appears to have manifest considerable care and concern as to whether there was any such prejudice to the defendant, and to have concluded to the contrary, with which conclusion we are not persuaded to disagree.

Affirmed. No costs awarded.

6. *People v. Pearson*, Colo., 546 P.2d 1259 (1976); *State v. Sharp*, 15 Wash.App. 585, 550 P.2d 705 (1976).

7. *State v. Eastmond*, 28 Utah 2d 129, 499 P.2d 276 (1972); *Ker v. California*, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726; *Davis v. U. S*, 9 Cir., 327 F.2d 301.

8. Art. I, Sec. 12, Utah Const.; *Jacob v. City of New York*, 315 U.S. 752, 62 S.Ct. 854, 86 L.Ed. 1166 (1942); *Lee Wing Chau v. Nagai*, 44 Haw. 290, 353 P.2d 998 (1960).

9. *State v. Morgan*, 23 Utah 212, 64 P. 356 (1901); *State v. Moore*, 111 Utah 458, 183 P.2d 973 (1947); *People v. Davis*, 183 Colo. 228, 516 P.2d 120 (1973).

ELLETT, C. J., and WILKINS and HALL, JJ., concur.

MAUGHAN, J., concurs in the result.