**STATE of Utah, Plaintiff and Respondent,**

v.

**David Stanley PIKE, Defendant and Appellant.**

**No. 19518.**

Supreme Court of Utah.

Dec. 30, 1985.

Mark S. Miner, Salt Lake City, for defendant and appellant.

David L. Wilkinson, Atty. Gen., J. Stephen Mikita, Asst. Atty. Gen., Salt Lake City, for plaintiff and respondent.

STEWART, Justice:

Defendant David Stanley Pike was charged with three counts of aggravated assault in violation of U.C.A., 1953, § 76–5–102. The jury convicted Pike on all three counts, and he was sentenced to an indeterminate term of zero to five years. On appeal, Pike claims that he was prejudiced because (1) the prosecutor incorrectly told the jury that Pike had used a "sawed-off" shotgun; (2) the complaining witness, a deputy sheriff, improperly mingled with the jury during a court recess; and (3) the trial judge improperly excluded the arresting officer's report.

On April 2, 1983, three intoxicated young men "crashed" a keg party at the Duckworth residence. The host of the party, Jerry Duckworth, a minor, was upset by their presence and rowdiness, and called his neighbor, the defendant, David Pike, for help in getting rid of the men.

Pike had his wife call the sheriff before he went across the street to the Duckworth residence. Pike's knock on the front door was answered by one of the uninvited men, Joe Doutis. Pike informed the three men that they were unwanted intruders and told them to leave. After a heated discussion the men left for a while.

The sheriff arrived shortly thereafter and was informed of what had happened. The sheriff left after instructing the residents to call him again if the men returned. When the three men eventually returned, Mrs. Pike immediately called the sheriff. Duckworth's parents, who had been summoned home, refused to allow the men into the home. One of the men shouted obscenities at Mrs. Duckworth, but took no other action. Two sheriff's patrol cars arrived. After a brief examination of the men's car, one officer left. The second officer, Officer Fleming, told the men to leave the area, and was himself preparing to leave when Pike approached him to ask why he had not

arrested the three intruders. Officer Fleming assured Pike that everything was under control and that the three were preparing to leave. Officer Fleming testified that Pike then said that he would take care of the intruders if the officers did not. On cross examination Fleming admitted that Pike's alleged statements had not been included in his police report, although they should have been. Pike then returned to his home. The three intruders informed Officer Fleming that they had trouble starting their car and asked him to move his car so they could start their car by pushing. At that point, Officer Fleming drove off. The men started the car, and then taunted and threatened Pike while the car engine was running.

The testimony concerning what ensued is conflicting. The evidence, viewed in the light most favorable to the jury's verdict, is that when the three started taunting him, Pike grabbed a shotgun which had been placed within easy reach of the front door and fired it in their direction, hitting the back window and near the front tire of the car. The men sped away and located Officer Fleming who returned and arrested Pike.

During trial, the prosecutor posed a question to Pike about using a "sawed-off" shotgun during the altercation. On defense counsel's objection, the question was reformulated to eliminate the reference. Later that day, after the court had taken a short recess, the trial judge questioned Officer Fleming in chambers as to whether he had spoken to any jurors during the recess. Officer Fleming admitted that a juror had asked him why he was limping. Fleming replied: "I told him I had bunged my toe.... And he asked me how I did that. And I told him about slipping in my back yard on the water and breaking—" At this point, the judge interrupted Fleming's narrative of the conversation. The judge and counsel agreed to let the incident go until after the verdict was in and then to question the jurors involved in the conversation. After the trial, the judge questioned the jurors involved and apparently determined that the

conversation was innocuous. The trial judge also refused to admit Officer Fleming's report of the incident and ruled that it could be used only for cross-examination.

After the verdicts were returned, Pike made a motion for a new trial based on supporting affidavits asserting that 1) he was prejudiced by the prosecutor's statement that he had used a "sawed-off shotgun," 2) Fleming's mingling with the jury was in violation of the trial judge's instructions and was prejudicial, and 3) the court's improper refusal to admit Officer Fleming's arrest report into evidence was error. Pike appeals the denial of that motion.

## I.

Defendant's first assignment of error is the prosecutor's reference to Pike's use of a sawed-off shotgun. The witnesses at trial testified that the defendant used an ordinary shotgun. The reference to a sawed-off shotgun occurred during the cross-examination of Pike, and was immediately retracted. On this record the one, apparently inadvertent, reference to a sawed-off shotgun was not prejudicial.

## II.

The second issue is whether Officer Fleming's mingling and conversing with the jurors during a recess in the trial deprived Pike of his right to trial by an impartial jury. We have long taken a strict approach in assuring that the constitutional guarantee of a fair trial not be compromised by improper contacts between jurors and witnesses, attorneys, or court personnel. *State v. Crank,* 105 Utah 332, 142 P.2d 178 (1943); *Glazier v. Cram,* 71 Utah 465, 267 P. 188 (1928); *State v. Anderson,* 65 Utah 415, 237 P. 941 (1925).

Both the Utah and the United States Constitutions guarantee trial by an impartial jury. United States Constitution, Amendments VI and XIV; Utah Constitution Art. 1, section 10. Anything more than the most incidental contact during the trial between witnesses and jurors casts doubt upon the impartiality of the jury and

at best gives the appearance of the absence of impartiality. *State v. Durand,* Utah, 569 P.2d 1107, 1109 (1977). Some jurisdictions have held that such conversations do not fatally affect the impartiality of the jury unless the defendant can show that actual prejudice resulted from the contact. *E.g., Martin v. State,* 242 Ga. 699, 251 S.E.2d 240, 242 (1978); *State v. Rhodes,* 219 Kan. 281, 546 P.2d 1396, 1399 (1976); *State v. Eaton,* Mo., 504 S.W.2d 12, 22 (1973). This Court, however, has enunciated a more stringent rule in recognition of the fact that prejudice may well exist even though it is not provable and even though a person who has been tainted may not, himself, be able to recognize that fact.

The rule in this jurisdiction is that improper juror contact with witnesses or parties raises a rebuttable presumption of prejudice. In *State v. Anderson,* 65 Utah 415, 237 P. 941 (1925), a juror rode to and from the courthouse with one of the prosection witnesses. The trial judge denied a motion for a new trial because the prosection witness did not intend to influence the juror, and the juror, by affidavit, stated he had not discussed the trial, nor had he been influenced in his judgment in voting on the verdict. On appeal, this Court held that it could not "be said that appellant had the full benefit of trial by an impartial jury and was in no way influenced except by the evidence and the instructions of the court...." *Id.* at 419, 237 P. at 943. The Court stated that one reason for the presumption is the inherent difficulty in proving how or whether a juror has in fact been influenced by conversing with a participant in the trial. *Id.*

Another reason for the presumption is the deleterious effect upon the judicial process because of the appearance of impropriety. In *Glazier v. Cram,* 71 Utah 465, 267 P. 188 (1928), we held that the mingling of jurors and prominent witnesses could not be condoned because "it is probable

that a doubt must and will continue to exist in the mind of the losing party and that of his friends as to whether or not he had a fair trial." *Id.* at 470, 267 P. at 190. *Accord State v. Crank,* 105 Utah at 268, 141 P.2d 178, 194 (1943) ("In such instances, the verdict of the jury, like Caesar's wife, *must be above suspicion.*") (Emphasis in original.)[1]

■ Due consideration for the potential and often unprovable tainting of a juror by contacts between jurors and others involved in a trial that are more than brief and inadvertent encounters, leads us to reaffirm the proposition that a rebuttable presumption of prejudice arises from any unauthorized contact during a trial between witnesses, attorneys or court personnel and jurors which goes beyond a mere incidental, unintended, and brief contact. The possibility that improper contacts may influence a juror in ways he or she may not even be able to recognize and that a defendant may be left with questions as to the impartiality of the jury, leads to the conclusion that when the contact is more than incidental, the burden is on the prosecution to prove that the unauthorized contact did not influence the juror.

■ In this case, an important prosecution witness, who was both the arresting officer and a witness at the scene of the altercation, engaged in conversation in the hall of the courthouse during a recess with three jurors regarding a personal incident, i.e., an accident he had sustained while cleaning his patio which caused him to limp. Immediately after the court reconvened, the trial court questioned the officer in camera on the record about the conversation. The questioning was brief and did not disclose the entire contents of the conversation. There is no other evidence as to the scope and subject matter of the conversation since a transcript of the post-verdict questioning of the jurors has not been provided on this appeal. From what is reported in the transcript of the first hearing on

---

1. *State of Durand,* Utah, 569 P.2d 1107 (1977) and *State v. Black,* Utah, 551 P.2d 518 (1976), do not refer to a presumption of prejudice but were

decided on the basis of the inconsequential nature of the contact.

the matter, the conversation amounted to more than a brief, incidental contact and no doubt had the effect of breeding a sense of familiarity that could clearly affect the juror's judgment as to credibility. It was sufficient to warrant a presumption of prejudice. Indeed, even if the jurors had denied that they were influenced by the encounter in the post-trial hearing, that is not enough to rebut the presumption of prejudice. Accordingly, the conviction must be reversed and the matter remanded for a new trial.

HALL, C.J., and HOWE, DURHAM and ZIMMERMAN, JJ., concur.