**STATE of Utah, Plaintiff and Appellee,**

v.

**Lew DAY, Defendant and Appellant.**

**No. 900517–CA.**

Court of Appeals of Utah.

Aug. 13, 1991.

---

J. MacArthur Wright (argued), Gallian & Westfall, St. George, for defendant and appellant.

R. Paul Van Dam, State Atty. Gen., Marian Decker (argued), Asst. Atty. Gen., Salt Lake City, for plaintiff and appellee.

Before BILLINGS, ORME and RUSSON, JJ.

## OPINION

RUSSON, Judge:

Lew Day appeals his conviction of manslaughter, a second degree felony, in violation of Utah Code Ann. § 76–5–205 (1990). We affirm.

## FACTS

We review the facts in the light most favorable to the jury's verdict. *State v. Harper,* 761 P.2d 570 (Utah App.1988).

On August 10, 1989, Lew Day, David Kile, Lewis Sudweeks, and Evan Wiltshire were driving in Day's truck in Piute County, Utah. The foursome had been drinking throughout the day and were intoxicated. In the early evening, the group stopped along the side of the road to urinate. Day took two rifles from the truck and, when Kile was approximately thirty yards away from the truck, shot Kile fatally in the head. Day then threatened the others, saying, "I'll have all you bastards in a pile before the night's over." Sudweeks fled the scene on foot to a nearby house, the Morrill residence. Wiltshire, who had passed out, remained in the front of the truck. After fleeing to the Morrill residence, Sudweeks left the home for a disputed amount of time,[1] but returned again in a frightened state.

The Piute County sheriff arrived at the Morrill residence at about 9:00 p.m. that evening and began an investigation of the crime scene. The sheriff checked and noted the location of the truck, Kile's body, blood spots, and two expended .22 caliber brass casings. At approximately 2:00 a.m. on August 11, Deputy Nalwalker, while headed south near the crime scene, picked up Day, who was wandering along the roadside. Further investigation led to discovery of the murder weapon, Day's rifle, at the end of a track of boot prints on a hill overlooking the crime scene. The boot prints were made by boots similar to those Day was wearing when picked up by Deputy Nalwalker.

Day was charged with second degree murder, but the trial court also instructed the jury on manslaughter at the request of the State. The jury did not find Day guilty of second degree murder, but did find him guilty of manslaughter.

## ISSUES

Day appeals that conviction, raising the following issues: (1) Was the jury properly instructed as to lesser included offenses? (2) Was allegedly improper contact between a jury member and a trial witness prejudicial error? (3) Did the prosecutor's closing argument constitute prosecutorial mis-

---

1. Sudweeks testified that he was gone less than ten minutes. The testimony of Harold Morrill, who testified on behalf of the State, was less clear. When asked whether twenty or thirty minutes would be a good estimate, Morrill replied: "Yeah. Somewhere in there."

conduct? (4) Was the evidence sufficient to convict him of manslaughter? (5) Was he denied due process because of inadequate representation by counsel?

## I. JURY INSTRUCTIONS .

Day asserts that the trial court erred in instructing the jury on manslaughter in direct contradiction to his wishes. Day claims that the jury should only have been instructed on the crime with which he was originally charged. In the alternative, Day argues that the jury should also have been instructed on negligent homicide, a lesser included offense of manslaughter. We disagree.

### A. Manslaughter Instruction

 The Utah Supreme Court has held that "a trial court may properly give a lesser included offense instruction, *even over a defendant's objection*, if there is clearly no risk that the defendant will be prejudiced by lack of notice and preparation so as to deprive him of a full and fair opportunity to defend himself." *State v. Howell*, 649 P.2d 91, 95 (Utah 1982) (emphasis added).

The reason for such a rule is clear. Unlike a civil contest where different strategies may be used to produce an "all or nothing" outcome, "[a] primary purpose of a criminal trial is the vindication of the laws of a civilized society against those who are guilty of transgressing those laws." *Id.* at 94. The role of the State is to prosecute the defendant of the committed crime. If the State is able to prove a lesser included offense, even if not specifically charged, "it would be a mockery of our criminal laws for a court to ignore the proved crime and acquit on the charged crime." *Id.* at 95.

Day was originally charged with second degree murder, in violation of Utah Code Ann. § 76–5–203 (1990).[2] Manslaughter is a lesser included offense of second degree murder. *State v. Pendergrass*, 803 P.2d

1261, 1264 (Utah App.1990) (citing *State v. Crick*, 675 P.2d 527, 529 (Utah 1983)). The only difference in the two crimes material to this case is the mental state required. If the act was done intentionally or knowingly, such would constitute second degree murder. If the act was done recklessly, such would constitute manslaughter. Either way, Day was given "the notice and opportunity necessary to prepare his defense to both offenses[.]" *State v. Baker*, 671 P.2d 152, 156 (Utah 1983). Consequently, instructing the jury on the lesser included offense of manslaughter in no way prejudiced Day nor deprived him of a fair trial, and thus, it was not error for the trial court to do so.

### B. Negligent Homicide Instruction

 In the alternative, Day argues that the jury should have been instructed on negligent homicide, a lesser included offense of manslaughter. A trial court's refusal to give a requested instruction presents questions of law only, therefore, we review such action under a correction of error standard, granting no particular deference to the trial court's ruling. *Carpet Barn v. Department of Transp.*, 786 P.2d 770, 775 (Utah App.1990) (citing *Ramon v. Farr*, 770 P.2d 131, 133 (Utah 1989)).

The Utah Supreme Court has stated that "the trial court is obligated to instruct the jury on a lesser included offense only when there is a 'rational basis for a verdict acquitting the defendant of the offense charged and convicting him of the included offense.'" *State v. Larocco*, 794 P.2d 460, 462 (Utah 1990) (quoting *Baker*, 671 P.2d at 159). Additionally, in order to protect a defendant's constitutional right to a jury trial, "a defendant's requested lesser included offense must be given when there is some evidence which supports the theory asserted by defendant." *State v. Standiford*, 769 P.2d 254, 266 (Utah 1988) (citing *Baker*, 671 P.2d at 157–59). Thus, we must examine whether there is a rational

---

**2.** Utah Code Ann. § 76–5–203 (1990) provides, in pertinent part:
 (1) Criminal homicide constitutes murder in the second degree if the actor:

 (a) intentionally or knowingly causes the death of another....

basis for a verdict acquitting Day of manslaughter, but still convicting him of negligent homicide, noting in particular if there is sufficient evidence to support Day's request for a negligent homicide instruction.

■ Negligent homicide and reckless manslaughter are conceptually related. Both require that the defendant's conduct be " 'a gross deviation' from the standard of care exercised by an ordinary person." *Id.* at 267. The sole difference is that manslaughter requires that the defendant was actually aware of the risk of death, while in negligent homicide, the defendant was not, but should have been aware of such risk. *Id.* (citing *Boggess v. State*, 655 P.2d 654, 656–58 (Utah 1982) (Stewart, J., concurring)).

■ In the case at bar, the evidence presented at trial is sufficient to show that Day was aware of the risk of death, and thus, to convict him of manslaughter. The State put forth evidence that Day deliberately pointed the rifle at Kile's head and shot him. Day's statement after shooting Kile that he would have the others "in a pile before the night was over" evidences an understanding of the risk of death, if not an actual intent to kill. Moreover, intoxication does not serve as a defense to an offense which has, as an element, a reckless state of mind. Utah Code Ann. § 76–2–306 (1990); *see, e.g., Standiford*, 769 P.2d at 265. We, therefore, find that there was no rational basis for a verdict acquitting the defendant of manslaughter and convicting him of negligent homicide.

■ Furthermore, the evidence is insufficient to support Day's request for a negligent homicide instruction. In fact, Day puts forth no rational basis under which a jury could find that he merely acted with criminal negligence rather than recklessness. Nowhere does he even assert, much less show, that he was unaware of the risk of death in taking deliberate aim at Kile and firing the rifle. Without such evidence, we cannot validate an instruction on negligent homicide. Accordingly, we hold that the jury was properly instructed.

## II. IMPROPER CONTACT

■ Day also contends that contact between Deputy Robert Nalwalker, a witness for the State, and Grover Smith, a member of the jury, was improper and had an adverse impact on the trial. Contact occurred during a lunch recess when Deputy Nalwalker noticed that Smith had been left at the courthouse when the other jurors had been escorted to a local cafe by court personnel. Deputy Nalwalker told Smith to wait while he asked the trial judge what to do about Smith being left behind. At the instruction of the judge, Nalwalker and the county clerk (who was serving as bailiff) drove Smith approximately one or two miles to the cafe where the rest of the jury was having lunch. There was no conversation among the three men during the short drive. Defense counsel knew of this contact, but consciously declined to object at trial.

The Utah Supreme Court has held that failure to raise objection when aware of improper contact constitutes a waiver, holding that it is not appropriate for defense counsel to invite error, and then to rely on such error for purposes of appeal. *State v. Parsons*, 781 P.2d 1275, 1284–85 (Utah 1989). Moreover, if defense counsel, having knowledge of improper contact, fails to make a timely objection, "relief by new trial will not be granted, for the reason that a party will not be allowed ... to remain silent and speculate upon the chances of a verdict." *State v. Smith*, 776 P.2d 929, 932 (Utah App.1989) (quoting *Glazier v. Cram*, 71 Utah 465, 267 P. 188, 190 (1928)).

In the case at bar, Day's trial counsel knew of this incident, but affirmatively chose not to raise objection. If the contact were objectionable, defense counsel should have objected during the trial and not have waited until after final adjudication of the matter. "[W]e cannot allow defendant to seek to vacate his [conviction] by alleging on appeal prejudicial error which was affirmatively, knowingly, and intentionally waived.... To rule otherwise would permit a defendant in a criminal case to 'invite' prejudicial error and implant it in the

record as a form of appellate insurance against an adverse [outcome]." *Parsons*, 781 P.2d at 1285. Accordingly, we refuse to do so, finding that objection to the allegedly improper jury contact was waived.

██ Even if this court were to rule that defense counsel's actions do not constitute a waiver, the contact was not such that it should be classified as inappropriate. This court has recently held that "a rebuttable presumption of prejudice arises from any unauthorized contact during a trial between witnesses, attorneys or court personnel and jurors" unless such contact is a "mere incidental, unintended, and brief contact." *Logan City v. Carlsen*, 799 P.2d 224 (Utah App.1990) (citing *State v. Pike*, 712 P.2d 277, 280 (Utah 1985)). In the case at bar, the contact, while intended, was incidental and brief. The parties were together for only a few minutes, and "[n]o conversation took place, in the normal sense of an oral exchange of sentiments, observations, opinions or ideas." *State v. Jonas*, 793 P.2d 902, 909 (Utah 1990) (citation omitted). We, therefore, hold that even had defense counsel objected at trial, no improper contact occurred.[3]

## III. PROSECUTORIAL MISCONDUCT

██ Day also claims that misstatements of fact by the prosecutor in his closing argument were so prejudicial to Day that a new trial is warranted. Rulings concerning whether prosecutorial conduct justifies a mistrial will not be overturned absent an abuse of discretion. *State v. Speer*, 750 P.2d 186, 190 (Utah 1988) (citing *State v. Hodges*, 30 Utah 2d 367, 370, 517 P.2d 1322, 1324 (1974)).

First, Day asserts that in closing argument, the prosecutor stated that Sudweeks was gone from the Morrill residence for a shorter period than Harold Morrill's testimony evidenced. This is relevant only because defense argued that if Sudweeks were the murderer, he could have hidden or disposed of the murder weapon during this absence. However, Morrill's testimony is not clear or conclusive as to how long Sud-

weeks was actually away from the Morrill residence. Morrill testified that he left Sudweeks on the porch and went inside the house to get his children out of the bath. When Morrill returned, Sudweeks was gone, returning ten to fifteen minutes later. When asked by defense counsel if Sudweeks was gone twenty to thirty minutes, Morrill replied, "Yeah. Somewhere in there." However, Morrill also testified that he "hadn't looked at the clock." To the contrary, Sudweeks testified he was only gone five to ten minutes. In closing argument, the prosecutor argued that Morrill did not know when Sudweeks left.

The Utah Supreme Court has stated that, "[g]enerally speaking, in argument to the jury, counsel for each side has considerable latitude and may discuss fully from their viewpoints the evidence and the inferences and deductions arising therefrom." *State v. Tillman*, 750 P.2d 546, 560 (Utah 1987) (citations omitted). In other words, the court must allow for the prosecution's reasonable inferences and deductions. Since Morrill was inside the house when Sudweeks left, the prosecutor's statement that Morrill did not know when Sudweeks left was certainly within prescribed bounds, and thus, we find no abuse of discretion by the trial court in overruling defendant's objection thereto.

██ Day also asserts that the prosecution's misstatement that Sudweeks was tested for blood alcohol content constitutes prosecutorial misconduct. However, Day failed to object to this misstatement at trial and is thus barred from raising it on appeal. *State v. Johnson*, 774 P.2d 1141, 1147 (Utah 1989) (citing *Tillman*, 750 P.2d at 551). "[T]o hold otherwise would foster invited error." *Id.*

## IV. SUFFICIENCY OF THE EVIDENCE

██ Day next contends that the evidence was insufficient to support his conviction. This court recently clarified our marshaling requirements, adopting "the

---

**3.** Although we do not find that this contact constituted an impropriety, we recommend that

should this situation arise in the future, the bailiff should take the juror to the cafe alone.

'marshal the evidence' standard for use in criminal appeals from jury verdicts where sufficiency of the evidence is at issue." *State v. Moore,* 802 P.2d 732, 739 (Utah App.1990). This standard "requires appellants to 'marshal all the evidence in support of the trial court's findings and then demonstrate that even viewing it in the light most favorable to the court below, the evidence is insufficient to support the findings.' " *Id.* at 738 (quoting *Scharf v. BMG Corp.,* 700 P.2d 1068, 1070 (Utah 1985)).

In support of his sufficiency of the evidence claim, Day merely lists actions the sheriff could have taken to be more thorough in his investigation. Day neither marshals the evidence submitted at trial which supports the jury's verdict, nor does he argue why such evidence is insufficient. Clearly, Day has failed to comply with our marshaling requirements.

■ However, even if we were to determine that Day had sufficiently met our marshaling requirement, this court's power to review a jury's verdict on the ground of insufficiency of evidence is limited. The court must "view the evidence, along with the reasonable inferences from it, in the light most favorable to the verdict." *Id.* (citing *State v. Gardner* 789 P.2d 273, 285 (Utah 1989)). It is proper for us to reverse the jury's guilty verdict only if "the evidence and its inferences are so 'inconclusive or inherently improbable that reasonable minds must have entertained a reasonable doubt that the defendant committed the crime of which he was convicted.' " *Id.* (quoting *State v. Petree,* 659 P.2d 443, 444 (Utah 1983)). It is the role of the jury to weigh the evidence and assess the credibility of the witnesses. "[S]o long as some evidence and reasonable inferences support the jury's findings, we will not disturb them." *Id.* (citing *State v. Booker,* 709 P.2d 342, 345 (Utah 1985)).

Applying this standard of review, we find that there was sufficient evidence to show that Day violated Utah Code Ann. § 76-5-205 (1990). A violation of this section requires a showing that the defendant "recklessly cause[d] the death of another."

The State presented evidence showing Day fired the rifle with an awareness of the possible consequences, as well as other evidence from which a jury could reasonably draw inferences of defendant's guilt. We, therefore, will not disturb the jury's verdict.

## V. ADEQUACY OF COUNSEL

■ Lastly, Day alleges that he was denied due process of law because of the inadequacy of trial counsel. In support of this allegation, Day lists numerous failures by trial counsel, including counsel's failure to object to alleged differences in the testimony regarding the crime scene between the preliminary hearing and the trial. Day fails, however, to establish any of these arguments in the record or by legal authority. Indeed, he principally relies upon a set of diagrams prepared by his wife, which appear nowhere in the record and have simply been appended to his appellate brief. Therefore, neither the argument nor the analysis is meaningful. "The argument shall contain the contentions and reasons of the appellant with respect to the issues presented with citations to the authorities, statutes and parts of the record relied on." Utah R.App.P. 24(a)(9). Due to non-compliance with the court's briefing rule, the court declines to address this issue and assumes the correctness of the trial court's judgment. *See State v. Amicone,* 689 P.2d 1341, 1344 (Utah 1984); *English v. Standard Optical Co.,* 814 P.2d 613, 618–19 (Utah App.1991); *Christensen v. Munns,* 812 P.2d 69, 72 (Utah App.1991); *Demetropoulos v. Vreeken,* 754 P.2d 960, 965 (Utah App.) (Jackson, J., concurring), *cert. denied,* 765 P.2d 1278 (Utah 1988); *Koulis v. Standard Oil Co. of Cal.,* 746 P.2d 1182, 1184–85 (Utah App.1987).

## CONCLUSION

In conclusion, we hold that: (1) The trial court's decision to instruct the jury as to the lesser included offense of manslaughter and its refusal to instruct on negligent homicide were proper. (2) Defense counsel's conscious decision not to object to

contact between a state witness and a juror waived such objection for the purposes of appeal. Moreover, such contact was not improper. (3) The prosecutor's assertions in closing argument were within allowable bounds, therefore, the trial court did not abuse its discretion in permitting them. (4) There was sufficient evidence to convict defendant of manslaughter. Accordingly, we affirm.

BILLINGS and ORME, JJ., concur.