IN THE UTAH COURT OF APPEALS

----ooOoo----

| | | |
|---|---|---|
| State of Utah, | ) | MEMORANDUM DECISION |
| | ) | |
| Plaintiff and Appellee, | ) | Case No. 20100487-CA |
| | ) | |
| v. | ) | F I L E D |
| | ) | (March 22, 2012) |
| Pedro Hugo Rodriguez, | ) | |
| | ) | 2012 UT App 81 |
| Defendant and Appellant. | ) | |

-----

Fourth District, Provo Department, 081403214
The Honorable Lynn W. Davis

Attorneys:     Michael D. Esplin and Ann P. Boyle, Provo, for Appellant
               Mark L. Shurtleff and Karen A. Klucznik, Salt Lake City, for Appellee

-----

Before Judges Voros, Thorne, and Roth.

VOROS, Associate Presiding Judge:

¶1     Defendant Pedro Hugo Rodriguez was convicted of fifty-six counts of various sex crimes against five boys between the ages of nine and sixteen during sleepovers at his house.[1]  Rodriguez asserts two challenges on appeal.

---

[1]The counts include thirty-one counts of sodomy upon a child, a first degree felony, *see* Utah Code Ann. § 76-5-403.1 (2008); two counts of aggravated sexual assault, a first degree felony, *see id.* § 76-5-405; one count of forcible sodomy, a first degree felony, *see id.* § 76-5-403; and twenty-two counts of unlawful sexual conduct with a sixteen- or seventeen-year-old, a third degree felony, *see id.* § 76-5-401.2.

¶2     Rodriguez first contends that the trial court abused its discretion in admitting into evidence portions of his videotaped statement to police.  In the course of interrogating Rodriguez, a detective falsely stated that one of the boys showed rectal scarring and that Rodriguez's DNA was found inside the boy.  In an effort to explain this purported evidence, Rodriguez offered various scenarios not involving anal intercourse.  When police expressed skepticism, he admitted to having engaged in anal intercourse with the boy on two occasions. When the detective told Rodriguez he had made up the DNA evidence, Rodriguez responded, "I never thought he would turn me in."

¶3     Rodriguez contends that the trial court admitted his statement in violation of rule 403 of the Utah Rules of Evidence.[2]  Under rule 403, "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following:  unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  Utah R. Evid. 403.  Rodriguez claims that his statement was not probative or at least that any probative value was substantially outweighed by the danger of unfair prejudice.

¶4     Evidence poses a danger of unfair prejudice in this context if it has "an undue tendency to suggest decision on an improper basis, commonly but not necessarily an emotional one, such as bias, sympathy, hatred, contempt, retribution or horror." *State v. Maurer*, 770 P.2d 981, 984 (Utah 1989) (citation and internal quotation marks omitted). Rodriguez maintains that his videotaped statement was unfairly prejudicial because it was speculative, and that it was speculative because it was given in response to the detective's statement, "Well, I'm wondering how your DNA got inside of [the boy]," and the detective's question whether, other than anal intercourse, "there's another way that you can think of that your DNA got inside of [the boy]."

¶5     Rodriguez's claim is foreclosed by *State v. Decorso*, 1999 UT 57, 993 P.2d 837. There, a jailhouse informant testified that Decorso had described torturing, sexually assaulting, and murdering a shoe store clerk.  *Id*. ¶¶ 75–76.  Decorso contended that this testimony was admitted in violation of the Eighth and Fourteenth Amendments to the United States Constitution and rule 403 of the Utah Rules of Evidence.  *See id*. ¶ 72.

---

[2]Rodriguez does not claim that his statement was involuntary or that its admission otherwise violated any state or federal constitutional guarantee.

After rejecting Decorso's constitutional claims, the supreme court also rejected his rule 403 claim. *See id*. ¶ 79. The court stated, "This testimony essentially consisted of Decorso's own confession to the murder; therefore, it was *highly* probative of his guilt." *Id*. at ¶ 80. In contrast, the danger of unfair prejudice was slight, because other evidence corroborated the jailhouse informant's testimony. *See id*. "Moreover," the court concluded, "all evidence establishing a defendant's guilt is, to some extent, prejudicial to that defendant. However, rule 403 only excludes evidence which poses a danger of *unfair prejudice* that substantially outweighs the probative value of that evidence. [The jailhouse informant's] testimony in *Decorso* posed little danger of such prejudice." *See id*.; *see also State v. Cobb,* 774 P.2d 1123, 1128–29 (Utah 1989) (rejecting a rule 403 challenge to admission of a recorded confession).

¶6    Rodriguez's recorded statement to police here is at least as probative as the jailhouse informant's testimony in *Decorso.* Rodriguez argues that to the extent the detective's questioning was premised on a false claim of DNA evidence showing that Rodriguez's semen was found in the victim's rectum, it called for speculation. Some of the detective's questions were indeed phrased to invite speculation; but Rodriguez admitted—obviously based on personal knowledge—that he had twice engaged in anal intercourse with the victim. This admission was probative. Indeed, "[t]he defendant's own confession [is] probably the most probative and damaging evidence that can be admitted against him." *Skilling v. United States,* 130 S. Ct. 2896, 2916 (2010) (second alteration in original) (quoting *Parker v. Randolph,* 442 U.S. 62, 72 (1979) (plurality opinion)).

¶7    Similarly, the danger of unfair prejudice posed by the admission of Rodridguez's statement is negligible compared to that posed by the jailhouse informant's second-hand descriptions of Decorso's torturing, sexually assaulting, and killing his victim ruled admissible in *Decorso*. *See Decorso*, 1999 UT 57, ¶¶ 75-76. We agree with Rodriguez's assertion that his creative attempts to explain away the non-existent DNA evidence may well have "'swayed the jury's perception of the defendant—and not for the better.'" (Quoting *State v. Snyder,* 860 P.2d 351, 360 (Utah Ct. App. 1993).) However, the force of Rodriguez's statement derived not from his evasions, but from his admissions. And Rodriguez has not demonstrated that his admission to facts supporting two charged counts would have "an undue tendency to suggest decision on an improper basis." *State v. Maurer,* 770 P.2d 981, 984 (Utah 1989).

¶8     Rodriguez also contends that the trial court erred in allowing a police officer to testify on rebuttal that he and other officers saw on Rodriguez's cell phone several pictures of young boys. The pictures themselves were not offered or admitted into evidence. Two of these pictures, the officer testified, were of a young boy with his bare buttocks showing; the third showed the same buttocks with an erect penis pressed against them. Rodriguez maintains that admission of this testimony was erroneous on three grounds: (1) it violated the best evidence rule, *see* Utah R. Evid. 1002; (2) it constituted improper rebuttal evidence, because Rodriguez never denied having images on his cell phone; and (3) the State had not disclosed the pictures as required by rule 16 of the Utah Rules of Criminal Procedure.

¶9     We do not decide whether the trial court erred in admitting this testimony, because we conclude that any error was harmless.[3] Trial court error warrants reversal "only if a review of the record persuades the [appellate] court that without the error there was 'a reasonable likelihood of a more favorable result for the defendant.'" *State v. Knight*, 734 P.2d 913, 919 (Utah 1987) (quoting *State v. Fontana*, 680 P.2d 1042, 1048 (Utah 1984)). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 920 (quoting *Strickland v. Washington*, 466 U.S. 668, 694 (1984)); *see also* Utah R. Crim. P. 30(a); Utah R. Evid. 103(a).

¶10    At the time of trial, the five victims ranged in age from fourteen to eighteen years old. Each testified to the charged sexual acts in brief but excruciating detail—though, as Rodriguez correctly notes, not with complete consistency. Some also testified that Rodriguez threatened them or their family with physical violence, a claim inferentially supported by the presence of weapons in Rodriguez's home.

¶11    Although Rodriguez generally denied any sexual abuse, on the witness stand he confirmed much of the context of the boys' testimony. For example, he acknowledged that they would sleep over at his house, sometimes in his bed—although he claimed that he would sleep on the floor or the sofa when they did. He described kissing one of the boys, "you know, on the forehead." He acknowledged taking the boys shooting and

---

[3]Rodriguez does not specifically argue otherwise. He contends that admission of the recorded interview was prejudicial, and he contends that admission of that interview in combination with the cell phone testimony was prejudicial. But he does not contend that admission of the cell phone testimony alone was prejudicial.

buying them clothes, food, video games, and paintball guns. In addition, he admitted having sex with one of the boys four times, a sexual relationship that he acknowledged hiding from his roommate. And he admitted to having lied numerous times in his police interview—in fact, he estimated that fifty percent of what he told police was a lie.

¶12    In sum, our review of the record does not undermine our confidence in the verdict or persuade us that, without the cell phone testimony, there was a reasonable likelihood of a more favorable result for Rodriguez. *See Knight*, 734 P.2d at 919, 920.

¶13    Affirmed.


_____
J. Frederic Voros Jr.,
Associate Presiding Judge


-----


¶14    WE CONCUR:


_____
William A. Thorne Jr., Judge


_____
Stephen L. Roth, Judge