IN THE UTAH COURT OF APPEALS

----ooOoo----

| | | |
|---|---|---|
| State of Utah, | ) | OPINION |
| | ) | |
| Plaintiff and Appellee, | ) | Case No. 20090105-CA |
| | ) | |
| v. | ) | F I L E D |
| | ) | (August 30, 2012) |
| Tevita F. Tafuna, | ) | |
| | ) | 2012 UT App 243 |
| Defendant and Appellant. | ) | |

-----

Third District, West Jordan Department, 071402390
The Honorable Stephen L. Roth

Attorneys:     Ronald Fujino, Salt Lake City, for Appellant
               Mark L. Shurtleff and Kenneth A. Bronston, Salt Lake City, for Appellee

-----

Before Judges Davis, Thorne, and Christiansen.

THORNE, Judge:

¶1     Tevita F. Tafuna appeals from his conviction on one count of aggravated robbery, a first degree felony. *See generally* Utah Code Ann. § 76-6-302 (2008). We affirm.


BACKGROUND

¶2     On October 27, 2007, Tafuna attended a Halloween party at a private residence in Sandy, Utah. One of the residents discovered Tafuna outside the resident's bedroom door, apparently standing guard. When the resident pushed past Tafuna to open the door, he observed Tafuna's companion, PJ Valdez, rifling through his things. At this

point, Tafuna pulled a knife. As Tafuna and Valdez, both brandishing knives, attempted to leave the party with goods stolen from the bedroom, a melee ensued between Tafuna and Valdez and some of the other party guests. Several people, including Tafuna, were wounded before police arrived.

¶3 Tafuna was charged with aggravated robbery and a weapons offense and was tried before a jury in October 2008. The State's evidence against Tafuna included his leather coat, which a witness had turned in to police the day after the Halloween party. In the leather coat, police had found a wallet containing multiple identification cards. The parties reached a pretrial stipulation that the identification cards would not be mentioned at trial.

¶4 On the first day of trial, prior to the State calling its first witness, it came to the district court's attention that one of the jury members had spoken with some of the State's witnesses outside of the courtroom. The district court held an in-chambers conference with the juror and the parties. The juror stated that he had turned down the wrong hallway, encountered several of the State's witnesses whom he mistook for fellow jurors, and engaged in small talk with them for approximately two minutes before everyone involved realized the mistake. The juror explained,

> I recall the only thing we discussed down there—I got this—we're waiting there and had been waiting. One of the first guys said, "I have been here since 8:00 this morning." And I said, "Well, you could be in someplace like Chicago in a airport, you know, with the blizzard." So it's—we were discussing airport carpeting. We realized the mistake and that's all we discussed.

The juror then apologized to the district court for the incident, the district court accepted the juror's apology, and the juror concluded, "It ain't going to happen again, I'll guarantee you that."

¶5 After the juror left chambers, the district court and both counsel agreed that the incident was "a pretty innoxious encounter." The State nevertheless suggested that it would not be "inappropriate" to switch the juror with an available alternate juror, but added, "I think he feels bad for both sides that he made a mistake." Tafuna's counsel responded,

Yeah, I think that I don't feel differently. Well, nothing inappropriate happened, that's my feeling. But you could tell he takes it very seriously. It is an honest mistake. He feels so badly about it. He said it wouldn't happen again. I think he's going to be conscious and a good juror.

The district court warned the juror not to discuss the incident with the other jurors and allowed the juror to remain on the jury. The juror went on to serve as the jury foreperson.

¶6    During the trial, the State presented testimony from a detective who had investigated the Halloween party incident. However, the State failed to apprise the detective about the parties' stipulation regarding the identification cards found in Tafuna's coat, and when the State asked the detective if he had received any evidence after October 27, 2007, he replied, "A couple of iPods, a cellphone, a leather coat, a wallet inside the leather coat with several people—several different people type IDs." The State immediately changed the subject by asking the detective about the iPods, and no further reference was made to the identification cards.

¶7    Tafuna moved for a mistrial, arguing that the mention of the identification cards violated the parties' stipulation and suggested to the jury that Tafuna had additionally been involved in criminal identity theft. The district court denied the motion, reasoning that the reference to the identification cards was fleeting and was not emphasized by either side, that it was not deliberate on the State's part, and that the reference would cause no injustice to Tafuna. The district court gave Tafuna's counsel the option of requesting a curative instruction, which counsel declined so as to not "emphasize the negative." Nevertheless, later in the trial, the State withdrew Tafuna's coat and its contents from evidence and the district court instructed the jury, "The jacket that came in you're not to—you're to disregard any testimony relating to it or—to the jacket or anything that was found in the jacket. And it's stricken and it is as if it were never entered into the record at this point."

¶8    On the third day of trial, just before the jury was sent to deliberate, Tafuna's counsel raised the issue of the potentially tainted juror again, arguing to the district court that the juror should be replaced with an alternate juror "in abundance of caution." The district court denied this request, stating that there had been no objection after the in-chambers conference with the juror and that the court remained convinced

that the juror was untainted by his contact with the State's witnesses. The jury convicted Tafuna of aggravated robbery,[1] and he now appeals.

ISSUES AND STANDARDS OF REVIEW

¶9    Tafuna first argues that the district court erred by allowing the juror who had interacted with the State's witnesses to serve on Tafuna's jury. Whenever a juror's interaction with a witness "goes beyond a mere incidental, unintended, and brief contact, there is a rebuttable presumption of prejudice, and . . . to counteract this presumption the prosecution must prove that the unauthorized contact did not influence the juror." *State v. Allen*, 2005 UT 11, ¶ 51, 108 P.3d 730 (internal quotation marks omitted). However, the invited error doctrine applies in the context of improper juror contacts, and trial counsel waives the issue by affirmatively choosing not to raise a timely objection to the potentially tainted juror. *See State v. Day*, 815 P.2d 1345, 1349–50 (Utah Ct. App. 1991).

¶10    Tafuna also argues that the district court erred when it refused to grant a mistrial after the State elicited testimony about the identification cards found in Tafuna's coat. We review the district court's denial of a mistrial motion only for an abuse of discretion. *See State v. Duran*, 2011 UT App 254, ¶ 12, 262 P.3d 468.

ANALYSIS

I.  Contact Between a Juror and State Witnesses

¶11    Tafuna's first argument on appeal is that the district court erred in allowing a juror who conversed with State witnesses outside of the courtroom to serve on Tafuna's jury. Utah law on contacts between jurors and witnesses has been described as "rigorous." *See Logan City v. Carlsen*, 799 P.2d 224, 227 (Utah Ct. App. 1990) (Orme, J., concurring); *see also State v. Pike*, 712 P.2d 277, 279 (Utah 1985) ("We have long taken a strict approach in assuring that the constitutional guarantee of a fair trial not be compromised by improper contacts between jurors and witnesses, attorneys, or court personnel."). "[A] rebuttable presumption of prejudice arises from any unauthorized contact during a trial between witnesses, attorneys or court personnel and jurors which

---

1. The district court apparently dismissed the weapons charge at the close of trial on Tafuna's motion. That charge is not at issue in this appeal.

goes beyond a mere incidental, unintended, and brief contact." *Pike*, 712 P.2d at 280. "[W]hen the contact is more than incidental, the burden is on the prosecution to prove that the unauthorized contact did not influence the juror." *Id*. This is because "improper contacts may influence a juror in ways he or she may not even be able to recognize and . . . a defendant may be left with questions as to the impartiality of the jury." *See id.*

¶12    In light of this rigorous approach to juror contacts, we agree with Tafuna that a presumption of juror prejudice arose in this case. However innocuous its subject matter, the two minute conversation between the juror and the witnesses was clearly "more than a brief, incidental contact where only remarks of civility were exchanged." *See State v. Erickson*, 749 P.2d 620, 621 (Utah 1987). This is sufficient to raise a presumption of prejudice under Utah case law. *See id.*; *Pike*, 712 P.2d at 279–80.

¶13    Tafuna also makes a persuasive argument that the juror's explanation of the incident did not, in and of itself, rebut or resolve the presumption of prejudice. *See generally Pike*, 712 P.2d at 279–80 (discussing the State's burden of rebutting the presumption of prejudice raised by improper juror contact). Here, despite the apparent harmlessness of the subject matter of the conversation, the juror's brief conversation with the State's witnesses could have influenced the juror "in ways he . . . may not even be able to recognize." *See id.* at 280. And Tafuna correctly points out that the district court only questioned the juror about the conversation itself and not about the encounter's effect on the juror's ability to remain fair and impartial.[2] However, we need not determine whether the State succeeded in rebutting the presumption in this case because it is apparent that Tafuna's counsel waived any objection to the juror's service and invited any error that Tafuna now claims the district court made.

¶14    After the juror described the incident, the district court stated its initial impression that the conversation was "pretty innoxious," and Tafuna's counsel immediately responded, "Yes." The State agreed, but expressed its lack of objection to replacing the juror with an available alternate. Had Tafuna requested replacement of the juror at that time, the district court would have been obligated to either replace the juror or require the State to rebut the presumption of prejudice. *See generally id.* ("[W]hen the contact is more than incidental, the burden is on the prosecution to prove that the unauthorized contact did not influence the juror.").

---

2. Even this might not have been sufficient for the very reason that the juror may not have "be[en] able to recognize" any biasing effect. *See State v. Pike*, 712 P.2d 277, 280 (Utah 1985).

¶15  Instead, however, Tafuna's counsel stated, "[Y]ou could tell [the juror] takes it very seriously.  It is an honest mistake.  He feels so badly about it.  He said it wouldn't happen again.  I think he's going to be conscious and a good juror."  The statement that the juror would be "conscious and a good juror" was an affirmative representation to the district court that Tafuna's counsel had no objection to the juror's partiality or his ability to serve on the jury.  As such, the statement constituted a waiver of the issue and the invitation of any error resulting from the juror's continuing service.[3]  *See State v. Day*, 815 P.2d 1345, 1349–50 (Utah Ct. App. 1991).

¶16  In light of Tafuna's counsel's earlier express approval of the juror's continued service, we also see no error in the district court's subsequent refusal to replace the juror when Tafuna's counsel later made such a request immediately prior to jury deliberations.  The only reason offered by counsel for this request was that it should be done "in [an] abundance of caution."  This request did not obviate counsel's prior express waiver of objection to the juror's service or otherwise place the district court on notice of a specific impending error.  Counsel's request also raised no circumstances other than an abundance of caution that might have required removal of the juror at that late stage of the trial.[4]

¶17  For these reasons, we determine that Tafuna's counsel affirmatively waived any objection to the juror's service and thereby invited any error arising from the improper

---

3.  Tafuna's counsel's statement also establishes a sound tactical reason for failing to insist on the juror's removal.  Counsel's assessment that the juror "takes it very seriously" and "feels so badly about it" recognized the possibility that the juror might have compensated for the incident by treating the State's witnesses with *greater* scrutiny than he might have otherwise.  This reasonable basis for failing to challenge the juror defeats Tafuna's cursory alternative argument that the decision constituted ineffective assistance of counsel by his trial counsel.  *See generally State v. Clark*, 2004 UT 25, ¶ 6, 89 P.3d 162 ("[D]efendant must overcome the strong presumption that [his] trial counsel rendered adequate assistance by persuading the court that there was *no conceivable tactical basis* for counsel's actions." (second alteration in original) (internal quotation marks omitted)).

4.  We can envision circumstances that might have required revisitation of the issue, such as testimony by the State's witnesses that the scope or duration of their contact with the juror exceeded that described by the juror.  However, no such circumstances were alleged in this case.

juror contact. Accordingly, we affirm the district court's handling of the juror contact issue.

## II. Denial of Tafuna's Motion for Mistrial

¶18 Next, Tafuna argues that the district court erred in denying his motion for mistrial. Tafuna moved for a mistrial after a detective testified, in violation of the parties' pretrial stipulation of exclusion, that he had received "several different people type IDs" that had been found in a wallet in Tafuna's coat. The district court denied Tafuna's motion, concluding that the single reference was not an intentional violation of the stipulation, neither party had emphasized the improper testimony, and Tafuna would suffer no injustice.

¶19 "We will not reverse a trial court's denial of a motion for mistrial absent an abuse of discretion." *State v. Robertson*, 932 P.2d 1219, 1230 (Utah 1997). Here, as found by the district court, the State offered a good faith explanation for the testimony, and neither side emphasized or repeated the single reference to the identification cards. Further, although we agree with Tafuna that negative inferences could arise from the identification card testimony, those inferences are somewhat speculative.

¶20 The identification card testimony is also less clear than Tafuna portrays it on appeal. The bare statement "several different people type IDs" could indicate that Tafuna possessed identification cards belonging to other persons besides himself, but it could also suggest that the wallet contained several different identification cards belonging to Tafuna—e.g., a driver license, school ID, and work ID. With no further suggestion by the State that the identification cards were evidence of additional wrongdoing by Tafuna, we see no reason to believe that the jury would have assumed anything other than an innocent interpretation of the ambiguous identification card testimony.

¶21 "Unless a review of the record shows that the [district] court's decision is plainly wrong in that the incident so likely influenced the jury that the defendant cannot be said to have had a fair trial, we will not find that the court's decision was an abuse of discretion." *Robertson*, 932 P.2d at 1231. In light of the reasons expressed by the district court and the ambiguity of the detective's reference, we cannot say that the reference deprived Tafuna of a fair trial. Accordingly, we affirm the district court's denial of his motion for mistrial.

CONCLUSION

¶22    Tafuna's trial counsel invited any error in allowing a potentially tainted juror to serve when counsel affirmatively declined to object after becoming aware of the extent of contact between the juror and several State witnesses.  This decision constituted a waiver of the issue by defense counsel, and the district court properly rejected trial counsel's later attempt to raise the issue again after two days of trial.  Further, the district court acted within its discretion in denying Tafuna's motion for mistrial where the single reference to identification cards was inadvertent and fleeting and any prejudice arising from the ambiguous reference was speculative.  For these reasons, we affirm Tafuna's conviction.


_____
William A. Thorne Jr., Judge


-----


¶23    WE CONCUR:


_____
James Z. Davis, Judge


_____
Michele M. Christiansen, Judge