JAMES SPRINGER, plaintiff in error, vs. THE STATE OF GEORGIA, defendant in error.

34   379
109   385

If, while the trial is in progress, one of the counsel engaged in the prosecution entertain and protect for a night, free of charge, the horses of some of the jurors, a verdict of guilty afterwards rendered will be set aside, and a new trial granted.

Motion for New Trial. In Spalding Superior Court. Decided by Judge Speer. November Term, 1865.

Springer, being found guilty of the offence of robbery, moved for a new trial, on the ground that A. D. Nunnally, Esq., one of the counsel for the State, residing in the county, and having considerable personal and professional influence, did, after the jury were empanneled, etc., take charge of, feed, and provide, during the night, for the horses of two of the jurors, to-wit, Touchstone and Moon, at their request, free of charge.

The motion was heard and decided upon the following affidavits:

*Peeples* and *Beck*, counsel for the prisoner, deposed that,

while the case was under consideration, Court being about to take a recess for supper, and there being a considerable crowd in the court house congregated about the benches and fire-places, they heard some one say, at the distance of ten or fifteen feet, that Touchstone, one of the jurors, wished to speak to Mr. Nunnally, one of the States's counsel, (who took a leading and prominent part in the case, and addressed the jury with much warmth and earnestness) about taking care of his horse for the night; that they heard Nunnally, but made no reply, Beck only remarking to Peeples, "come along;" that they did not hear the conversation between Nunnally and Touchstone, which was going on in an ordinary tone as they walked off; that nothing was said publicly, that they heard, about Moon also wanting his horse taken care of: nor did they know or hear of it until after the verdict was rendered.

*Nunnally* deposed, that after the evidence on both sides was introduced before the jury, and when the Court was about to take a recess for supper, two of the jurors, Touchstone and Moon, asked him to take care of their horses until morning; that he made mention previously* and to Mr. Peeples, cousel for defendant, that Touchstone wished to speak to him about taking charge of his horse for the night; that Peeples heard him, but said nothing in reply; that deponent did not, for a moment, suppose there was anything wrong in this; that he did take care of the horses of the two jurors for the night, at their request, and feed them free of charge; that he is confident the jurors meant no wrong by this, and he knows he himself did not think of the matter as beyond common courtesy and hospitality.

*Springer*, the prisoner, swore that he had no knowledge or information of the acts of Nunnally until after the trial.

*Touchstone*, one of the jurors, swore, that after the testimony had been gone through with, and the Court was about to adjourn for supper he requested a bailiff to ask permission of the Court to speak to Nunnally; that permission was granted,

---

* So in the Record; but, doubtless, should be *publicly*.—REP.

and deponent then asked Nunnally if he could put his horse in his stable until next morning, to which Nunnally assented; that the whole conversation took place in the presence of the Court; that the fact of the counsel's taking care of his horse did not affect his verdict; and that it was of his own free will, and unbiased by anything except the testimony.

The Court refused a new trial, and that is alleged as error.

PEEPLES, for plaintiff in error.

HAMMOND, Solicitor General, for the State.

HARRIS, J.

We are thoroughly persuaded, that the associate counsel for the State was solely actuated by his generous nature, in yielding to the request of the jurors engaged in the trial of the criminal cause brought up for review; and we give credit, also, to the affidavits of the jurors, that their verdict was entirely uninfluenced by anything but the testimony. So, too, in the *Hunter will case*, no man who knew Col. Crocker, one of the attorneys for the executor, would make the slightest imputation, at any time, on either his personal or professional conduct, yet, the verdict in favor of his client was set aside, because he had allowed a juror to dine at his table whilst the case was being tried. The same reason which led this Court to grant a new trial in that case, induces it to direct one in this.

The honor of the bar and the perfect purity of a jury, alike demand their entire separation, in their personal and social intercourse, whilst trials are progressing. However harmless, in themselves, as was the conduct of our respected brethren in these cases, we feel ourselves called upon, in this and in every case where this separation is not preserved with the utmost care, to evince, in the most decisive manner, our purpose to shut up every avenue through which corruption, or the influence of friendship, could possibly make an approach to the jury box.