SIMONTOK, Circuit Judge.
F. M. Threadgill obtained a verdict against Thomas C. Platt, representing the United States Express Company, on the law side of this court, at Lynchburg, 27th April, 1895, in the sum of $51,371. Judgment was entered and exceptions were taken, but the appeal was not perfected in time for the circuit court of appeals. A levy having been made under execution on this judgment, it was stayed; the defendant entering into bond, with sureties, conditioned in the alternative, for the payment of the said judgment on or before the 15th April, 1896, or the obtaining of a writ of error or supersedeas thereon on or before that date. This bill is now filed to enjoin said judgment, and to enjoin proceedings upon the said bond. After-wards, and by leave, an amended bill was filed, setting up yet other grounds for enjoining the judgment. The facts which are recognized and admitted on both sides are that pending the trial of the action at law, during the afternoon of the day preceding the day on which the case was submitted to the jury, some of the jurymen were present at and heard a conversation between one Bowden, the agent of the plaintiff, and a deputy marshal, in which the latter suggested that the former should treat to cigars. They heard his response that he was perfectly willing to do so, if a visit was paid to his place of business, and they thought that they were included in the invitation. After the court had adjourned for the day, three of the jury started to seek the place of business of Bowden, accompanied by a fourth juror, who was *193 going in the same direction, but not to the same place. On their way they either overtook or met the plaintiff, and, telling him their purpose, asked where Bowden’s place of business was. Plaintiff replied that his place of business was in the same building as that of Bowden, and that he would show them where it was. He went along with them. On the way he endeavored to show them into a church building in which he was interested, and, failing to enter, he continued with them to Bowden’s place of business. The fourth juror, who was with them, did not go to Bowden’s. The others, with plaintiff, did go, however. When they reached the store, plaintiff told the brother of Bowden the purpose of the jurors, and instructed him to get a'sample box of cigars,—25 in the box. He received the box; gave two of the jurors 9 cigars each, and the box with 7 cigars to the other juror. They waited about five minutes in the store, and then went out. On their way they met the fourth juror, and he was offered a cigar, which offer he declined. The cause of action in the pending suit was a lot of cigars, and an important question in assessing the damages recoverable was the character, quality, and value of the cigars. The bill charges that this communication with the jury had in this way tended to influence their verdict, was grossly improper, and that the verdict rendered so soon after it occurred should be set aside.
The trial by jury was instituted to secure an impartial tribunal of the issues of fact in a case. The jurors are kept as far as possible from all extraneous influences. And although the rigidity of the common-law practice has been relaxed, and now jurors are not kept secluded from possibility of such influences, still every precaution is taken to prevent them from reaching the jury. And, in so far as the absolute seclusion of the jury under the common law has been relaxed^ just so far should the moral restriction substituted in its stead be enlarged and enforced. The jury are instructed to try every case according to the evidence. They are sworn to do so. The evidence before them is always delivered under oath or affirmation. Every fact submitted to them is brought out by examination and cross-examination. Every question by which such fact is élicited must be put in the presence of counsel, is subjected to the scrutiny of counsel and to discussion by them of its competency or relevancy, and, if any dispute arises, it is decided by the court. This examination is controlled by rules of evidence, a violation of which, even with the sanction of the court, will be ground for a new trial. Testimony is taken only before a full jury, and the rule is inflexible that nothing goes to them except in the presence of all. Private communications, possibly prejudicial, between jurors and third persons or witnesses or the officer in charge, are absolutely forbidden, and invalidate the verdict, at least until their harmlessness is made to appear. Mattox v. U. S., 146 U. S. 150, 13 Sup. Ct. 50. “The rule is that the slightest tampering with the jury during the trial or prior to it, by a party, or the agent or attorney of a party, in whose favor the verdict has been rendered, is, on ground of public policy, good cause for setting aside the verdict, without reference to the merits of the case, and without considering whether the attempt to poison the sources of justice was or was not successful. On this point Hawkins says: ‘The law so abhors all corruption of this *194 kind that it prohibits anything which has the least tendency to it, what specious pretense soever it may be covered with, and therefore it will not suffer a mere stranger so much as to labor a juror to appear and act according to his conscience.’ Although this extreme doctrine is not universally approved, all the cases agree that if a party or his counsel, or any one for him, deliver to the jury or to a juror a paper, the tendency of which is to influence the verdict in favor of that party, without the consent of the opposite party, or leave of the court, a verdict given in his favor will be set aside.” Thomp. & M. Jur. p. 438, § 364. Such are the general rules. It is difficult, perhaps impossible, to reconcile the cases applying them, which in such number have been brought to the attention of the court by the learning and research of counsel. The general result to be deduced from an examination- of them is that in no case will a mere accidental meeting with a juror pending a trial, or an inadvertence, affect the verdict; and in alF other instances each case will be governed by its own circumstances. Great care is always to be taken to avoid suspicion as to the motive of the party, or as to the effect on the jury. Vane v. City of Evanston, 150 Ill. 616, 37 N. E. 901. And the interference with the jury is punished without regard to the merits of the case, or inquiry as to its actual effect on the verdict. Veneman v. McCurtain (Neb.) 50 N. W. 055; Knight v. Inhabitants of Freeport, 13 Mass. 218.
In the case at bar the jury was engaged—had been engaged for days—in trying a question between the complainant, defendant in the law court, and the present defendant, plaintiff in that court. The-main question in the case was as to the amount of damages to be allowed, and this amount of damages depended very much upon the quality, character, and value of the cigars intrusted by Threadgill to the express company, and by the latter lost to the former. The testimony was nearly all in. An effort had been made to produce the cigars before the jury, which had failed. Slurs upon the quality and value of the cigars had been uttered in the presence of the jury. Just at this critical period the plaintiff, Threadgill, casually met with-four of. the jury. He entered into company and conversation with them, walked with them towards his own store, and prolonged his companionship with them by visiting a church edifice on the road. He took three of them to his store. One of the jurymen, recognizing the manifest impropriety of the act, refused to accompany the others. 'With these others, Threadgill entered his store, called for a box of cigars, and distributed the whole box between the three. He, a dealer in cigars, suing for the value of cigars, put into the hands of one-fourth of the jury the best evidence of the value of his cigars, and gave them the means and opportunity of furnishing the same evidence to the rest of the jury. It does not fully appear what took place during the walk with Threadgill and the interview in his store. But the next day the jury brought in a full verdict for the plaintiff,—nearly all that plaintiff claimed,—the cigars getting their full value. The-least that can be said is that Mr. Threadgill embraced the accidental opportunity to ingratiate himself with this large contingent of the jury, and that he, unintentionally, it may be, placed in their hands a most valuable piece of testimony, which the other side had no means *195 of knowing or rebutting, or of explaining. The bare fact that a party to a cause is in close, familiar conversation with jurymen trying the cause, exhibiting himself to them in a most favorable way, and cultivating their regard, is in itself a circumstance of the most suspicious character. A verdict taken under circumstances like these “has the appearance of anything but fairness, and, let it be once understood that such things are permissible, and we will be treated to the spectacle of litigants vying with each other, in both private and public places, in attempts to win the good will and favor of the jury, and the administration of the law greatly scandalized thereby.” Vollrath v. Crowe, 9 Wash. 374, 37 Pac. 474. “However harmless might be the conduct of the plaintiff and of the jurors in this case, we feel called upon, in this and every case when the separation of the jury and the parties is not preserved with the utmost care, to evince, in the most decisive manner, our purpose to shut up every avenue through which corruption, or the influence of friendship, could possibly make an approach to the jury box.” Springer v. State, 34 Ga. 379.
The bill sets up another reason for reopening this verdict; that is, the charges of misconduct against the juror Wright. These charges have not been sustained.
At the healing the question of jurisdiction was not raised, nor is it raised in the pleadings. It has, however, been considered by the court. The first duty of a federal court is to inquire if a cause is within its jurisdiction. The complainant had lost all ground of relief at law when discovery was made of the-facts stated in the bill as ground for setting aside the verdict. This gives jurisdiction to this court sitting in equity. Knifong v. Hendricks, 3 Grat. 212; Lawless v. Reese, 3 Bibb, 486; Pelzer Manuf’g Co. v. Hamburg-Bremen Fire Ins. Co., 62 Fed. 1, 71 Fed. 826; Johnson v. Towsley, 13 Wall. 84; Marshall v. Holmes, 141 U. S. 598, 12 Sup. Ct. 62.
Another question was raised by the court at the hearing, not by any of the counsel. It was developed in the progress of the cause that the judgment at law had been carried to the supreme court of the United States on writ of error, and was there pending under a supersedeas. This question has been set at rest by Johnson v. Railway Co., 141 U. S. 610, 12 Sup. Ct. 124, following Parker v. Judges, 12 Wheat. 561. The circuit court sitting in equity can entertain a bill of this kind notwithstanding the writ of error. Let the injunction issue as prayed for in the bill. But, as it does not conclusively appear that the error committed by the defendant was with the design to corrupt the jury, the costs of the case will be paid by the complainant.