## STATE v. ANDERSON.

No. 4042.   Decided June 17, 1925.   (237 P. 941.)

1.  LARCENY—EVIDENCE HELD SUFFICIENT TO GO TO JURY. In prosecution for larceny of sheep, evidence *held* sufficient to go to jury.

2.  CRIMINL LAW—REQUESTED INSTRUCTIONS COVERED BY GIVEN INSTRUCTIONS PROPERLY REFUSED. Defendant's requested instructions were properly refused, where rule of law contained in them was sufficiently covered by court's other instructions.

3.  CRIMINAL LAW—ACT OF PROSECUTING WITNESS IN CARRYING JUROR TO AND FROM HIS HOME DAILY DURING TRIAL HELD TO REQUIRE NEW TRIAL. That prosecuting witness, by agreement with one of jurors, carried juror to and from his home daily during trial, lasting approximately three weeks, *held* to require new trial, especially where prosecuting witness took an active interest in prosecution; defendant not having been accorded trial by impartial jury, as guaranteed by Const. art. 1, § 12.

Appeal from District Court, Sixth District, Sevier County; *J. H. Erickson*, Judge.

Willard Anderson was convicted of grand larceny, and he appeals.

REVERSED AND REMANDED, with directions.

Headnote 1.   36 C. J. p. 923.
Headnote 2.   16 C. J. p. 1063.
Headnote 3.   16 C. J. p. 1160.

*Bean & Hunt*, of Richfield, and *King & Schulder*, of Salt Lake City, for appellant.

*Harvey H. Cluff*, Atty. Gen., and *L. A. Miner*, Asst. Atty. Gen. for the State.

GIDEON, C. J.

The appellant (defendant) was convicted in the district court of Sevier county of grand larceny, and was sentenced to an indeterminate term in the state prison for a period of from 1 to 10 years. The information charged appellant

with the felonious taking, stealing, etc., of certain sheep, the property of R. W., Claude, Leo R., and Carl Sevy, sometimes referred to in the record as Sevy Bros.

The errors assigned and argued are: (a) Insufficiency of the evidence to support the verdict; (b) failure of the court to give certain requested instructions and the giving of other instructions excepted to by appellant; and (c) denial by the trial court of appellant's motion for new trial. Among other grounds urged in support of the motion for a new trial is the alleged misconduct of one of the jurors during the trial.

In and prior to the year 1922 appellant was engaged in the sheep business. He and others, including the prosecuting witnesses, had their flocks upon the public domain in what is known as the Fish Lake reserve. Each flock owner was allotted certain territory, and was required to keep his sheep on the lands so allotted. A forest ranger had general supervision of the range on the public domain, and it was his duty to see that each flock master kept his sheep within the boundaries of the territory allotted him; also to ascertain the number of sheep ranging upon the various territories allotted to the different sheep owners. Necessarily these allotted districts were in many cases contiguous, and, according to the evidence, it was not an unusual occurrence for the sheep of one herd to wander away from that herd and attach themselves to the sheep of a different owner. Each sheep owner had different ear marks and wool brands. By these means each owner was able to distinguish his sheep from those of his neighbors.

In the latter part of August, 1922, certain sheep, to the number of approximately 245 head, belonging to Sevy Bros., either wandered or were driven away from the flock of said Sevy Bros. A number of Sevy Bros.' sheep were later found in possession of defendant. Others were found with the flock of an owner having territory located near that of Sevy Bros. as well as near that of appellant. There is testimony that one Christensen was seen in and around the flock of Sevy Bros. at or about the time of the disappearance

of the sheep. The testimony also shows that this Mr. Christensen was frequently, in fact almost constantly, at the sheep camp of appellant during the month of August, 1922. While the state's evidence is not very conclusive that there ever was a felonious taking of the sheep by appellant, there is sufficient testimony, in our judgment, to justify the court in submitting the case to the jury.

The trial of the case occupied more than two weeks of the court's time, and numerous witnesses testified at great length on behalf of the state as well as on behalf of appellant. It is therefore wholly impractical to attempt to state either generally or in detail in this opinion the testimony of the various witnesses bearing directly upon the issues in the case. However, after careful consideration of the testimony of all of the witnesses, we are satisfied that the court did not err in refusing to direct a verdict in appellant's favor at the close of the case.

The failure of the court to give the instructions requested by appellant was not error. The principle or rule of law contained in appellant's requests was sufficiently covered by the court's other instructions.

The third and last error assigned presents the most serious question. After the jury had arrived at a verdict, and had returned into court, and while the jury were being polled, counsel for appellant stated to the court that certain information had reached him, and he desired at that time to question one of the jurors. This privilege was granted, and from the information elicited by the questions asked by counsel it developed that one of the jurors resided about four and one-half miles from the place of trial at the county seat, and that during the trial such juror had frequently, in fact almost daily, ridden back and forth from his home to the courthouse with one of the prosecuting witnesses, Claude Sevy; that the juror and the witness rode in a closed car in which there were no other occupants; and that the juror arranged in advance with the witness to call at the juror's home in the mornings on his way to the county seat and carry the juror with him. In the evenings after court

they would ride home together. The prosecuting witness, Mr. Sevy, resided some miles farther away from the county seat than did the juror. This conduct on the part of the juror was strongly urged upon the trial court as ground for granting a new trial. It is evident from the trial court's oral review of the·motion for a new trial, which is in the record before us, that the court was not satisfied that the conduct of the juror was excusable, and in fact stated that, had the matter been called to his attention during the trial or before the verdict was rendered, he would likely have discharged the jury and directed that another jury be called to try the case. However, the court seemed to be satisfied that there was no intention on the part of Mr. Sevy to influence the verdict of the juror, and that the act of carrying the juror to and from his home was one of generosity and courtesy only. Affidavits were made by appellant and two of his attorneys to the effect that they were not aware that the juror was riding to and from the courthouse with Mr. Sevy during the trial of the case. Counter affidavits by the juror and Mr. Sevy were filed to the effect that not only appellant but his counsel as well knew of the fact that the juror and witness were thus riding together. Regardless of whether appellant and his counsel were aware of the fact that the witness and the juror were riding together or not, they were clearly not, and could not have been, aware of the fact that an agreement or understanding was had between the juror and witness that such witness should carry the juror back and forth during the trial of the case. It is admitted that no compensation was paid for the courtesy of being permitted to ride with the witness.

Our Constitution (article 1, § 12) guarantees to every one accused of a public offense a trial by an impartial jury. It is true that in this case the juror, as well as the witness, in their affidavits, affirm that no reference was made to the case during their trips back and forth. The affidavit by the juror is further to the effect that the fact of being accommodated by the prosecuting witness in being carried to and from his home in no way influenced his judgment or his

decision as a juror.  Granting that such may be the sit-
uation, and that it was not intended, by the prosecuting
witness, in extending the favor and courtesy that he did·
extend, to in any way influence the juror's verdict, and
granting further that the juror was not consciously influenced
by such favor, it nevertheless remains that the juror during
the trial did receive favors from one of the prosecuting wit-
nesses, and one who, according to the affidavits filed on mo-
tion for a new trial, took an active part in the prosecution,
sat in the courtroom near the district attorney, and fre-
quently instructed him as to certain lines of questions to
be propounded to the witnesses.  This witness was, appar-
ently at least, vitally concerned in the result to be reached.
Under that state of facts can it be said that appellant had
the full benefit of trial by an impartial jury and one in
no way influenced except by the evidence and the instruc-
tions of the court relative to the law applicable to the facts
in the case?  We think not.

Like questions to the one presented on this appeal have
frequently been under review by appellate courts. · The con-
clusions reached by different courts are conflicting, and
probably cannot be reconciled.  The authorities, however,
all agree that any conduct or relationship between a juror
and a party to an action during trial that would or might,
consciously or unconsciously, tend to influence the judgment
of the juror authorizes and requires the· granting of a new
trial, unless it is made to appear affirmatively that the judg-
ment of the juror was in no way affected by such relationship
or that the parties by their conduct waived their right to
make objection to such conduct.

The Court of Civil Appeals of Texas, in *Marshall* v. *Wat-
son*, 16 Tex. Civ. App. 127, 40 S. W. 352, says:

"The policy of the law is that the jurors selected shall not only
be impartial at the time this is done, but shall remain so during
the progress of the trial.  The party who is to be affected by their
verdict ought not to be suffered to approach them, and confer favors
and benefits upon them.  While his purpose and intention may be
ever so innocent, still it may have the effect of producing an in-
fluence that possibly he did not foresee.  If a practice of this char-

acter was permitted to go unchallenged, it would be difficult to draw the line, and say when it should cease, and the best policy to pursue is to prevent it altogether. It is impossible, in cases where questions of this kind arise, to determine whether harm or injury or improper influence resulted and an effort to ascertain the truth in that respect would be altogether speculative."

The Supreme Court of Georgia, in *Walker, Ex'r,* v. *Hunter,* 17 Ga. at page 414, says:

"The next of the grounds on which the granting of the new trial was put, that we shall notice, was 'the fact that while the cause was pending before the special jury, T. E. Crocker, Esq., one of the counsel for respondent, on the night of the twenty-third of March, entertained at his house two of the special jury to whom the said cause was submitted, and the respondent, Charles Walker.' This is undoubtedly a good ground. It is hardly in the power of affidavits wholly to free this affair from suspicion. It is not in the power of affidavits to show that the two jurors were not consciously or unconsciously affected by it."

The syllabus of the opinion in *Springer* v. *State,* 34 Ga. 379, is as follows:

"If, while the trial is in progress, one of the counsel engaged in the prosecution entertain and protect for a night, free of charge, the horses of some of the jurors, a verdict of guilty afterwards rendered will be set aside, and a new trial granted."

In the course of the opinion in *Clyde Mattox* v. *United States,* 146 U. S. at page 150, 13 S. Ct. 53, 36 L. Ed. 917, the court says:

"Private communications, possibly prejudicial, between jurors and third persons, or witnesses, or the officer in charge, are absolutely forbidden, and invalidate the verdict, at least unless their harmlessness is made to appear."

The Supreme Court of Oklahoma, in *Garvin* v. *Harrell,* 27 Okl. 373, 376, 113 P. at page 188 (35 L. R. A. [N. S.] 862, Ann. Cas. 1912B, 744), says:

"One of the grounds of the motion for new trial is misconduct of the jury and prevailing party. In support of this an uncontroverted showing was made that after the jury for the trial of the cause was impaneled, and during the noon recess, the plaintiff took John Keith and W. L. Patrick, jurors in the cause, to a restaurant kept by John Hoggard, another one of the jurors, and, after arriving there, W. R. Griffity, another of the jurors, entered, and that the plaintiff paid for the dinners of all of said jurors. The

court refused to set aside the verdict and grant a new trial on this showing, and this is alleged as one of the errors. We believe without exception, and uniformly, the courts of this country have held, conduct of this character on the part of the prevailing party is sufficient to avoid the trial."

In this same opinion the Oklahoma court quotes with approval the language of the Supreme Court of Nevada, in *Sacramento & Meredith Min. Co.* v. *Showers,* 6 Nev. 291, as follows:

" 'The rule applies to any treating of any of the jury at any time after they are sworn, and before they agree upon their verdict, whether once or several times, by design or inadvertently, in the presence of the officer or in his absence; and whether we might deem it called or uncalled for by the proprieties of life. And there is no hardship or undue severity in this rule. If the prevailing party is put to the expense and vexation of a second trial, he can blame no one but himself. It is simply enjoined upon him to refrain from intermeddling with the jury, to keep aloof from them during the progress of the trial, and to see that his attorneys and agents do the same."

See, also, the following: *Cottle* v. *Cottle,* 6 Greenl. (Me.) 140, 19 Am. Dec. 200; *Walker* v. *Walker,* 11 Ga. 203; *Platt* v. *Thereadgill* (C. C.) 80 F. 192; *Johnson* v. *Hobart* (C. C.) 45 F. 542; and Thompson on Trials (2d Ed.) § 2564.

The conduct of the juror and the witness in this case, measured by the standard laid down in the foregoing authorities, cannot and ought not have the approval of the court. It may well be, as stated in the affidavit of the witness Claude Sevy, that it was customary and usual in the community where this trial was had for people to ride with one another from their homes into the villages and return the same way without thought of reward or compensation. Such custom no doubt exists in that community, and in many other communities in this state, and it is to be commended; but it should also be remembered that, when a juror is selected by reason of his impartiality to determine not only the property rights between individuals, but in criminal cases the personal liberty of individuals charged with offenses, the law requires of the juror such conduct during that time that his verdict may be above suspicion as to

its having been influenced by any conduct on his part during the trial, or by any courtesy or favor received by him from any one in any way directly or indirectly interested in the. result of the litigation. It cannot be claimed that carrying a juror to and from his home daily, a distance of four and one-half miles, was not a substantial favor during a trial which lasted approximately three weeks.

We are not here dealing with one act of carrying a juror to his home, as was the court in *Hilton* v. *Southwick,* 17 Me. 303, 35 Am. Dec. 253, cited and relied upon by counsel for the state. The following quotation from the opinion in that case will illustrate the views of that court concerning the question made to appear by facts similar to those in this case:

"In this case the juror must be understood in his testimony as denying that he had any conversation with the plaintiff about the action, and as stating that the occasion of his riding home with the plaintiff was, that he had ordered his horse to be sent to him, that it had not arrived when the jury was discharged for that day, that he inquired for a passage and was informed by the plaintiff's son, that his father could carry him home. Although this took place while the action was on trial, the plaintiff does not appear to have sought for the juror, or to have conversed with him respecting it; and he did not go out of his own way to accommodate the juror. And yet the exercise of these acts of kindness under such circumstances is suited to produce suspicion that the juror had been influenced by improper motives and the court must feel a want of perfect confidence as much to be deplored by it as by the losing party. It has however come to the conclusion, not without doubt and hesitation, that the verdict may be regarded as found by a jury free from improper influences. But if such practices are continued, either directly or through the intervention of relatives or agents, they will afford just reason for the conclusion that there may be an undiscovered influence which must require verdicts found under such circumstances to be set aside. If there appeared the least attempt on the part of the plaintiff to seek and influence the juror, the verdict would be set aside."

Some suggestion is made that the witness Claude Sevy was not a party to this action; that it was a prosecution by the state. It is undisputed, however, that Claude Sevy was one of the owners of the sheep which the appellant is charged with having stolen. He testified at the trial on behalf of the

state. His conduct, as the same is made to appear, was such that he took an active interest in the prosecution, was present in court, and in every way assisted the state's attorney in presenting the state's case. While he was not a nominal party, he was an interested party. We may absolve the witness Sevy from in any way attempting to influence the juror by the courtesy shown him, and likewise concede that the juror was not consciously affected in rendering his verdict by the favors which he had received; but, in our judgment, such conduct cannot and ought not be approved, or a verdict rendered in such circumstances allowed to stand.

Authorities are cited holding that it is a matter of discretion with the trial court whether a new trial should be granted based upon misconduct of a juror, and a state of facts could readily be assumed under which an appellate court should not interfere with the discretion exercised by the trial court in denying a motion for a new trial based upon the alleged misconduct of a juror. But, as we view the record in this case, the appellant was denied a constitutional right to be tried and convicted, if convicted, by an impartial jury, as that term is used in the Constitution and is construed by courts.

Judgment reversed and cause remanded to the district court of Sevier county, with directions to grant a new trial.

THURMAN, FRICK, CHERRY, and STRAUP, JJ., concur.