2018 UT App 147

## THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
ANTHONY SOTO,
Appellant.

Opinion
No. 20160087-CA
Filed August 9, 2018

Third District Court, Salt Lake Department
The Honorable Mark S. Kouris
No. 151902137

Teresa L. Welch and Lisa J. Remal, Attorneys
for Appellant

Sean D. Reyes and Lindsey L. Wheeler, Attorneys
for Appellee

JUDGE GREGORY K. ORME authored this Opinion, in which
JUDGES DAVID N. MORTENSEN and JILL M. POHLMAN concurred.

ORME, Judge:

¶1 Anthony Soto was convicted of one count of aggravated sexual assault, a first degree felony. Soto appeals, contending that he was denied his constitutional right to an impartial jury when a uniformed highway patrol officer and a court information technology (IT) technician made inappropriate comments to the jury in a nonpublic, court-employee elevator inside the courthouse. We agree and therefore remand for a new trial.

BACKGROUND

¶2 During a lunch break on the second day of trial, the bailiff assigned to the trial escorted the jury to a nonpublic, court-employee elevator inside the courthouse. When they entered, a uniformed highway patrol officer was inside. According to the bailiff, while they were in the elevator, the highway patrol officer remarked, "[L]ooks like a jury, do you want me to tell you how this ends?" As they descended, the elevator stopped, and a court IT technician got on. The IT technician then began to speak with the jury. The bailiff paid little attention to the conversation but then heard the IT technician ask, "[C]an you say guilty?" Understandably concerned by what he had heard, the bailiff brought the comments to the trial court's attention.

¶3 After lunch, and outside the presence of the jury, the trial court relayed to the parties what had happened. The court explained that it would speak to the jurors individually to find out if any of them had heard what was said, and if they did, whether the jurors thought they could remain impartial. If the jurors answered that they had heard the comments but that the comments did not affect their judgment, the court suggested it would provide a curative instruction, explaining that the highway patrol officer and IT technician were merely speaking "off-the-cuff," that they knew nothing about the case, and that the jurors should not consider anything that they had heard in the elevator.

¶4 The court brought the jurors in one-by-one and asked them to report what they had heard. Juror 1 said that she heard the IT technician say, "[C]onvict him or hang him or it was something like that." Juror 2 reported that the highway patrol officer remarked, "[L]et me tell you how this ends." Juror 3 stated that the IT technician said, "You can already tell he's guilty." Juror 4 related the following: "[The IT technician] said, Hello jury, and . . . someone in the jury said, Do we have that

look? And [the IT technician] said guilty?" Juror 5 stated that the highway patrol officer said, "Just say he's guilty." According to Juror 6, the highway patrol officer asked the jury, "Are they guilty?" Juror 7 stated that the highway patrol officer made a comment but that she could not remember what it was. She also related the following: "[The IT technician] came in and said, Oh, it looks like a jury. And I said, Do we all have that look?" Juror 8's report was nearly identical to Juror 7's, but he added that when one of the jurors asked the IT technician how he could tell that they were on a jury, the IT technician said "something to the effect of . . . looks guilty or something."

¶5    Although each juror remembered hearing something slightly different, all but one juror said that either the highway patrol officer or the IT technician used the word "guilty" or something similar. Jurors 1 and 2 offered that they took the comments as jokes, and each of the jurors insisted that the comments had no impact on their judgment. Nevertheless, Soto moved for a mistrial, stressing that the gist of what the jurors had heard touched on the sensitive subject of guilt and that the comments were made by court staff in a nonpublic, court-employee elevator. The court denied the motion because it believed that the jurors took the comments as jokes and because no juror hesitated in saying that they would remain impartial. As a precaution, the court stated that it would provide a curative instruction.

¶6    When the jury returned, the court offered the curative instruction. The court explained that the highway patrol officer's role at the court is to guard the Utah Supreme Court when it is in session. The court added, "He has really no connection to the court system at all. He's not a bailiff, he's nothing like that. He drives his police car, parks downstairs where we park and he goes up to guard [the Court]. So he would have absolutely no knowledge of any part of this trial." The court told the jury that the other person who entered the elevator was an IT technician. Concerning the IT technician, the court stated, "Now we know

what IT guys know about trials and that's pretty much nothing. We know that our equipment dies off on occasion and he comes in and fixes it." The court finished the instruction by reiterating that the highway patrol officer and the IT technician knew nothing about the case and stated that they were just trying to be funny, which they were not.

¶7    At the close of trial, the jury found Soto guilty of aggravated sexual assault. Soto appeals.

ISSUE AND STANDARDS OF REVIEW

¶8    Soto contends that the trial court erred in denying his motion for a new trial. "When reviewing a [trial] court's denial of a motion for a new trial, we will not reverse absent a clear abuse of discretion[.]" *State v. Allen*, 2005 UT 11, ¶ 50, 108 P.3d 730 (quotation simplified). "At the same time, however, we review the legal standards applied by the [trial] court in denying the motion for correctness." *Id.* (quotation simplified).[1]

ANALYSIS

¶9    Soto contends that he was denied his constitutional right to an impartial jury when the trial court denied his motion for a mistrial after a highway patrol officer and a court IT technician

---

1. Soto also contends that his conviction was not supported by sufficient evidence. But this contention is largely unpreserved, and although he asserts that we can reach it under the rubric of plain error, his plain error analysis is inadequately briefed. In addition, the remnants of his argument that were preserved lack merit. Because of the deficiencies in the briefing of this second issue and because we remand for a new trial on the first issue in any event, we do not further address the second issue.

made inappropriate comments to the jury while in a nonpublic, court-employee elevator. We agree.

¶10    The United States Constitution and the Utah Constitution guarantee a criminal defendant the right to an impartial jury. U.S. Const. amend. VI; Utah Const. art. 1, § 12. These guarantees require that verdicts be "above suspicion" as to whether any juror might have been influenced by any inappropriate contact. *See State v. Anderson*, 237 P. 941, 944 (Utah 1925). Because it is difficult to show that a juror has been tainted by improper contact, and because improper contact "may influence a juror in ways he or she may not even be able to recognize," our Supreme Court has stated that "a rebuttable presumption of prejudice arises from any unauthorized contact during a trial between witnesses, attorneys or court personnel and jurors which goes beyond a mere incidental, unintended, and brief contact." *State v. Pike*, 712 P.2d 277, 280 (Utah 1985).

¶11    The parties disagree whether the rebuttable presumption of prejudice applies to the unique set of facts before us. According to the State, our Supreme Court has drawn a hard line between court participants and court personnel, applying the rebuttable presumption only if the contact was between a juror and a participant in the defendant's trial. Soto argues that the rebuttable presumption of prejudice applies more broadly and includes all court personnel, even if they are not directly involved in the case.

¶12    To be sure, in addressing the rebuttable presumption of prejudice, the Court has at times made reference to court participants and at times to court personnel. Indeed, it used both terms in *State v. Allen*, 2005 UT 11, 108 P.3d 730. There, the Court addressed whether Allen's constitutional right to an impartial jury had been violated where a juror's spouse had told the juror about the defense's intention to move for a mistrial based on a witness's testimony and where the juror had relayed that information to the other jurors. *Id.* ¶ 47.

¶13    In discussing the rebuttable presumption, the Court articulated the following:

> Allen correctly observes that when any unauthorized contact during a trial *between witnesses, attorneys or court personnel and jurors* goes beyond a mere incidental, unintended, and brief contact, there is a rebuttable presumption of prejudice, and that to counteract this presumption the prosecution must prove that the unauthorized contact did not influence the juror. However, the State also correctly notes that this rebuttable presumption only applies when the contact is between a juror and *other court participants*, not jurors and third parties unrelated to the proceedings.

*Id.* ¶ 51 (emphases in original) (quotation simplified). The Court concluded that the unauthorized contact between the juror and the juror's spouse did not trigger the rebuttable presumption of prejudice because the contact did not occur "between a juror and *court personnel.*" *Id.* ¶ 53 (emphasis added).

¶14    In our view, the Court's references in *Allen* to "court participants" were not meant to mark the boundaries of the rebuttable presumption. Rather, the Court was highlighting a key difference between the facts of *Allen*, where the conduct was between a juror and a third party—the juror's spouse—and other cases in which our courts have applied a rebuttable presumption of prejudice. *See, e.g., State v. Erickson*, 749 P.2d 620, 620–21 (Utah 1987) (contact between a juror and a witness); *Pike*, 712 P.2d at 279–80 (same); *Anderson*, 237 P. at 942–44 (same); *Logan City v. Carlsen*, 799 P.2d 224, 225–26 (Utah Ct. App. 1990) (contact between the jury and the bailiff assigned to the trial).

¶15    We conclude that the rebuttable presumption of prejudice applies both to inappropriate contacts between jurors and court

participants and to inappropriate contacts between jurors and court personnel. Indeed, our Supreme Court has stated as much. *See Allen*, 2005 UT 11, ¶¶ 51, 53 (stating that the rebuttable presumption of prejudice "applies when the contact is between a juror and other court participants, not jurors and third parties unrelated to the proceedings," but later noting the contact in question was not "between a juror and court personnel") (quotation simplified); *Pike*, 712 P.2d at 280 ("[A] rebuttable presumption of prejudice arises from any unauthorized contact during a trial between witnesses, attorneys or court personnel and jurors."). And the Court's references to "court personnel" should not be interpreted to mean in-court participants only. There can, of course, be some overlap between the two terms, but in our view, the Court has not cordoned off inappropriate contacts between jurors and court personnel who are not directly involved in a defendant's trial from the reach of the rebuttable presumption of prejudice.

¶16 We stress that the overarching principle underpinning the rebuttable presumption analysis is whether, despite the inappropriate contact, the verdict remains "above suspicion." *See Anderson*, 237 P. at 944. A conclusion that the rebuttable presumption does not apply to inappropriate contacts with court personnel in general would be at odds with this overarching principle and would dilute the right to an impartial jury. For example, such a conclusion would preclude a court from applying the rebuttable presumption of prejudice to comments made by a judge not assigned to the defendant's case, even though one can readily envision circumstances where such comments would be highly inappropriate.[2] The right to an impartial jury is not so limited.

---

2. Consider a hypothetical encounter where another trial court judge enters a nonpublic, court-employee elevator with the jury and urges the jury to convict the defendant because, in the

(continued…)

¶17    Having clarified the scope of the rebuttable presumption of prejudice, we now address whether the highway patrol officer's and the IT technician's comments triggered the presumption. The State does not dispute that the highway patrol officer and the IT technician are court personnel, but our analysis does not end there. As our Supreme Court has stated, the presumption is not triggered unless the encounter "goes beyond a mere incidental, unintended, and brief contact." *Pike*, 712 P.2d at 280.

¶18    Although the contacts between the jury and the highway patrol officer and the IT technician were relatively brief encounters in an elevator, we cannot say that they were merely incidental and unintended. In *Carlsen*, we held that a bailiff's brief remarks to the jury about the sentencing differences between misdemeanors and felonies triggered a rebuttable presumption of prejudice. 799 P.2d at 225–26. In reaching that conclusion, we stressed that, although the bailiff's comments did not specifically relate to the defendant's case, they "touched on the extremely sensitive issue of sentencing." *Id.* at 226.

¶19    The comments made in the present case were even more inappropriate than those made by the bailiff in *Carlsen*. Here, the highway patrol officer and the IT technician intentionally spoke to the jurors about the most sensitive issue of a criminal case: whether the defendant is guilty. We cannot think of another topic that would create a stronger appearance of impropriety. Accordingly, we conclude that the contacts, while brief, were

-------

(…continued)
judge's experience, criminal defendants are "almost always" guilty and deserve to be convicted "99 times out of 100." Although it is unlikely that such an encounter would ever happen, it would surely violate the right to an impartial jury and trigger the rebuttable presumption of prejudice even though the wayward judge was not a participant in the defendant's trial.

neither incidental nor unintended and that they therefore triggered a rebuttable presumption of prejudice.

¶20    We now consider whether the State rebutted the presumption of prejudice. We conclude that it did not.

¶21    The State insists that because each juror told the trial court that the comments did not affect his or her impartiality and because the court provided a curative instruction, the State successfully rebutted the presumption of prejudice. But our Supreme Court has stated that a juror's denial that they were influenced by an inappropriate contact "is not enough to rebut the presumption of prejudice." *Pike*, 712 P.2d at 281. *Accord Erickson*, 749 P.2d at 621; *Anderson*, 237 P. at 944. As for the curative instruction, it may have done as much harm as good.

¶22    Regarding the highway patrol officer, the court stated that he

> usually comes when the Supreme Court is in session because they have to guard those judges [up] there. . . . He has really no connection to the court system at all. He's not a bailiff, he's nothing like that. He drives his police car, parks downstairs where we park and he goes up to guard those folks. So he would have absolutely no knowledge of any part of this trial.

Telling the jury that the highway patrol officer works with the Supreme Court and that he parks downstairs where court personnel and judges park does not eliminate the possibility that the highway patrol officer knew about Soto's case or at least the propriety of a guilty verdict. But more importantly, highway patrol officers are regularly involved in criminal trials as witnesses and are seen as authoritative figures—perhaps all the more so in the case of one assigned to protect the justices of the State's highest court. Any comments made by a highway patrol officer about a defendant's guilt could influence a juror,

consciously or not. Moreover, the bailiff assigned to Soto's case was rightly concerned about the highway patrol officer's comments and stated that the highway patrol officer remarked, "[L]ooks like a jury, do you want me to tell you how this ends?" By making that statement and then, moments later, not correcting the IT technician when he suggested that Soto was guilty, the highway patrol officer implied either that he knew something about Soto's case or that criminal defendants are invariably guilty. The curative instruction and the jurors' responses that they could remain impartial were not enough to dispel the taint of impropriety.

¶23 A rebuttable presumption of prejudice was triggered, and it was not rebutted. The comments made by court personnel leave us with no choice but to conclude that Soto's right to an impartial jury was violated.

CONCLUSION

¶24 We conclude that Soto's constitutional right to an impartial jury was violated when the highway patrol officer and the IT technician made inappropriate comments to the jury in a nonpublic, court-employee elevator. Accordingly, we reverse Soto's conviction and remand for a new trial.

———————