**2019 UT App 32**

## THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellant,
*v.*
ROBERTO SERRANO,
Appellee.

Opinion
No. 20170673-CA
Filed March 7, 2019

Fourth District Court, Provo Department
The Honorable Michael D. Lyon
No. 141400422

Sean D. Reyes and Karen A. Klucznik, Attorneys
for Appellant

Douglas J. Thompson, Attorney for Appellee

JUDGE MICHELE M. CHRISTIANSEN FORSTER authored this Opinion,
in which JUDGES KATE APPLEBY and JILL M. POHLMAN concurred.

CHRISTIANSEN FORSTER, Judge:

¶1     A jury convicted Defendant Roberto Serrano of ten criminal charges, including aggravated sexual abuse of a child, rape of a child, and sodomy upon a child. After returning its verdict, the jury informed the parties and the trial court that a bailiff had provided it with an audio recording of a witness's trial testimony to review during its deliberations. Arguing that the jury's access to that testimony prejudiced him, Defendant requested a new trial. The district court granted that request and the State appeals. We affirm.

BACKGROUND

¶2     Following allegations of sexual abuse, an investigator interviewed two alleged child victims at the Children's Justice Center (CJC Interviews). In the CJC Interviews, each child described incidents of abuse involving Defendant. Based upon these allegations, the State charged Defendant in a multi-count information.

¶3     At trial, as part of its case-in-chief, the State played the CJC Interviews for the jury. The children also testified at trial. Defendant's strategy at trial included arguing that the children had fabricated the allegations. In support of this theory, Defendant drew the jury's attention to the differences and inconsistencies between the children's statements in the CJC Interviews and their testimony at trial. Defense counsel noted that the children testified at trial about new allegations not previously described in the CJC Interviews. Defense counsel also called an expert who testified that children's memories "are not like a tape recorder" and the process of reconstructing memories "can be affected by a number of different factors that can influence the quality of recollection." Defense counsel highlighted one child's initial "strong denial that there was anything inappropriate occurring . . . at her home." Another defense expert testified about the physical injuries one would expect to see under the circumstances alleged. Among other things, this expert concluded that the likelihood that one child had experienced full vaginal intercourse as she testified at trial was "probably just not on the table."

¶4     During its deliberations the jury received, as part of the trial exhibits, the video recordings of the CJC Interviews.[1] After

---

1. The district court found that "[t]he parties stipulated to allowing the DVD of the CJC interview to be provided to the

(continued…)

several hours of deliberations, without the knowledge of the parties or the trial court judge, the jury asked the bailiff[2] for a transcript of the trial testimony of one of the children. The bailiff explained to the jury that a transcript was not available. The jury again asked the bailiff for a transcript and, without the knowledge of the parties or the judge, the bailiff provided the jury with an audio recording of one child's trial testimony. Soon after receiving that recording, the jury found Defendant guilty on all ten charges.

¶5    The trial court excused the jury after it had returned a verdict and completed its charge, though all of the jury members remained in the courtroom to speak with the parties. The jurors informed the parties and the trial court that they had received an audio recording of one child's trial testimony. Defendant subsequently filed a motion for a new trial arguing that the jury's access to an audio recording of trial testimony was prejudicial extraneous evidence that should not have been provided to the jury during its deliberations.

---

(…continued)
jury during its deliberations." On appeal, the parties dispute the existence of such a stipulation. Neither party disputes, however, that the CJC Interview recordings went back with the jury as part of the trial exhibits.

2. The officer in charge of the jury here served the dual role of law clerk for the trial judge and bailiff. Following Defendant's post-trial motion for a new trial based upon the bailiff's actions, the trial judge recused from the case to avoid a potential conflict of interest. We therefore refer to the judge presiding over the trial as the "trial court," and we refer to the judge presiding over the post-trial motions as the "district court."

¶6     The district court held two evidentiary hearings on Defendant's motion for a new trial. At the second hearing, the bailiff confirmed that he had provided the jury an audio recording of one child's trial testimony. Some of the jurors also testified that, during their deliberations, the jury had received and listened to the audio recording of the child's trial testimony. Defendant argued that the jury's unsupervised access to a recording of trial testimony unduly emphasized that testimony. He further argued that it undermined his trial strategy and deprived him of his right to a fair trial.

¶7     The district court granted Defendant's motion for a new trial. The district court determined that it was error for the bailiff to provide the jury with an audio recording of a witness's trial testimony without following proper procedures. *See* Utah R. Civ. P. 47(o) ("After the jury have retired for deliberation, if there is a disagreement among them as to any part of the testimony . . . they may require the officer to conduct them into court. Upon their being brought into the court the information required must be given in the presence of, or after notice to, the parties or counsel.").[3] The district court further determined that the jury's access to the recording of the trial testimony violated rule 17 of the Utah Rules of Criminal Procedure. *See* Utah R. Crim. P. 17(*l*) (2018) (stating that, when retiring to deliberate, "the jury may take with them the instructions of the court and all exhibits which have been received as evidence, except exhibits that should not, in the opinion of the court, be in the possession of the jury, such as exhibits of unusual size, weapons[,] or

---

3. The Utah Rules of Civil Procedure also govern criminal proceedings "where there is no other applicable statute or rule" and provided that the civil rule "so applied does not conflict with any statutory or constitutional requirement." Utah R. Civ. P. 81(e).

contraband"); *see also State v. Cruz*, 2016 UT App 234, ¶ 39, 387 P.3d 618 (explaining that "under no circumstances shall the jury have unfettered access to audio- or video-recorded statements in the jury room during deliberations" (quotation simplified)).[4] These rule violations, the district court concluded, deprived Defendant of his right to a fair trial. The State appeals the district court's decision.

## ISSUE AND STANDARDS OF REVIEW

¶8 The State argues that the district court erroneously granted Defendant's motion for a new trial. We review a district court's decision to grant a motion for a new trial for an abuse of discretion. *State v. Bossert*, 2015 UT App 275, ¶ 13, 362 P.3d 1258. "We assume that the [district] court exercised proper discretion unless the record clearly shows the contrary." *State v. James*, 819 P.2d 781, 793 (Utah 1991). We review the court's factual findings underlying its decision to grant a new trial for clear error,

---

4. The parties' primary dispute concerns the provision of recorded trial testimony to the jury during its deliberations. The parties do not dispute that the recorded CJC Interviews went back with the jury during its deliberations. As a general rule, we do not approve of providing the jury with recorded testimony, in any form, for it to review during its deliberations though we recognize that it may seem important or perhaps even necessary to a particular legal theory. *See State v. Cruz*, 2016 UT App 234, ¶¶ 38–39, 387 P.3d 618. "'The law does not permit depositions or witnesses to go to the jury room. Why should a witness be permitted to go there in the form of [recorded] testimony?'" *Id.* ¶ 36 (quoting *State v. Solomon*, 87 P.2d 807, 811 (Utah 1939)). But given that the parties here did not and do not challenge the provision of the recorded CJC Interviews to the jury during its deliberations, we do not address this question further.

*Bossert*, 2015 UT App 275, ¶ 13, and "we review the legal standards applied by the district court . . . for correctness," *State v. Allen*, 2005 UT 11, ¶ 50, 108 P.3d 730 (quotation simplified).

## ANALYSIS

¶9    The district court determined that the jury's improper access to a witness's trial testimony during its deliberations affected Defendant's right to a fair trial. Accordingly, the district court granted Defendant's motion for a new trial. On appeal, the parties do not dispute the district court's determination of error and impropriety. That is, both parties agree that the bailiff should not have provided the jury with an audio recording of a witness's trial testimony without the permission of the trial court judge or in a way not permitted by rule.

¶10    The State argues, however, that the district court erred in ultimately concluding that the jury's unrestricted access to a witness's trial testimony was prejudicial to Defendant. Specifically, the State asserts that "the contact between the bailiff and the jury concerning the [child's] trial testimony did not create a presumption of prejudice. Thus, the [district] court erroneously presumed prejudice." We agree with the State that the contact between the jury and the bailiff here did not warrant application of a rebuttable presumption of prejudice. We nevertheless conclude that the district court did not exceed its discretion when it granted Defendant's motion for a new trial.

¶11    The State advances two challenges to the district court's decision. First, the State argues that the district court improperly construed the jury-bailiff contact as improper contact between the jury and court personnel, necessitating a presumed prejudice standard. Second, the State argues that the district court erred in concluding that the bailiff's provision of testimonial evidence to

the jury prejudiced Defendant. We address each argument in turn.

## I. The Inappropriate-Contact Analysis

¶12 The constitutions of the United States and the state of Utah guarantee a criminal defendant the right to an impartial jury. U.S. Const. amend. VI; Utah Const. art. I, § 12. Consistent with this right, jury verdicts must be "'above suspicion' as to whether any juror might have been influenced by any inappropriate contact." *State v. Soto*, 2018 UT App 147, ¶ 10, 427 P.3d 1286 (quoting *State v. Anderson*, 237 P. 941, 944 (Utah 1925)), *cert. granted*, 432 P.3d 1231 (Utah 2018); *accord State v. Crank*, 142 P.2d 178, 194 (Utah 1943) (observing that "the verdict of the jury, like Caesar's wife, *must be above suspicion*"). Consequently, our supreme court has held that "a rebuttable presumption of prejudice arises from any unauthorized contact during a trial between witnesses, attorneys[,] or court personnel and jurors which goes beyond a mere incidental, unintended, and brief contact." *State v. Pike*, 712 P.2d 277, 280 (Utah 1985). If applicable, this rebuttable presumption of prejudice shifts the burden to the State and requires that the prosecution "prove that the unauthorized contact did not influence the [jury]." *State v. Allen*, 2005 UT 11, ¶ 51, 108 P.3d 730.

¶13 Here, without the knowledge of the parties or the judge and during its deliberations, the jury asked the bailiff to provide a transcript of a witness's trial testimony. The bailiff responded to the request by providing the jury with an audio recording of that testimony without relaying the request to the trial court and without the knowledge of the parties. The State argues, and we agree, that the exchange in this case—the contact with the bailiff and the jury's request for evidence—did not qualify as "inappropriate contact" justifying a presumption of prejudice. *See Pike*, 712 P.2d at 280. The particular jury-bailiff contact at issue here is contemplated by our rules.

¶14 To be sure, the officer in charge of the jury in our trial courts—the bailiff in the case at hand—plays a unique role in jury trials. When a case is submitted to the jury, for example, the officer is charged with shielding the jury from "any communication to be made to them." Utah R. Crim. P. 17(*l*) (2018). Indeed, our rules prohibit the officer from "speak[ing] to the jury except to ask them if they have agreed upon their verdict." *Id.* But because "the bailiff is assigned to minister to the jurors' needs and to be the contact person," we expect "contacts beyond mere civilities between jurors and a bailiff." *See State v. Jonas*, 793 P.2d 902, 909 (Utah Ct. App. 1990). While deliberating, the jury may ask the bailiff—and only the bailiff—to pass along its request for evidence or information on points of law regarding the case. Utah R. Crim. P. 17(m) ("[I]f [the jury] desire[s] to be informed on any point of law arising in the cause, they shall inform the officer in charge of them, who shall communicate such request to the court."); Utah R. Civ. P. 47(o) ("[I]f there is a disagreement among [the jurors] as to any part of the testimony, or if they desire to be informed on any point of law arising in the cause, they may require the officer to conduct them into court.").

¶15 Under the circumstances here, the jury's contact with the bailiff was authorized by our procedural rules. The jury twice asked the bailiff for a transcript of a witness's trial testimony. Although the jury's contact with the bailiff was not necessarily improper or prejudicial, the bailiff should have relayed the jury's request to the trial court. *See* Utah R. Crim. P. 47(o). The court—after discussion with counsel and deeming it appropriate—could then have brought the jury into court where the testimony could have been replayed, in full, "in the presence of, or after notice to, the parties or counsel." *Id.* The bailiff's failure to relay the jury's request to the court does not render the jury's contact with the bailiff unauthorized. As a result, the rebuttable presumption of prejudice applicable in situations involving inappropriate

contact does not apply here and the district court erred in concluding otherwise. The burden therefore should have remained on Defendant to affirmatively establish that his right to a fair trial had been prejudiced by the jury's receipt of recorded testimony rather than having that burden shifted to the State to disprove prejudice. We now consider whether, despite the trial court improperly shifting the burden, the district court nevertheless properly determined that Defendant had affirmatively established prejudice.

## II. Prejudice

¶16 Because the burden-shifting associated with the rebuttable presumption of prejudice was not warranted here, Defendant retained the burden to establish prejudice. That is, Defendant was required to demonstrate that the information the bailiff provided to the jury during its deliberations deprived him of his right to a fair trial. *See* Utah R. Crim. P. 24(a); *see also State v. Harmon*, 956 P.2d 262, 268 (Utah 1998) ("If the error is substantial and prejudicial to the extent that there is a reasonable probability that it affected the reliability of the trial outcome, then a new trial is required.").

¶17 As the State observes, to merit a new trial "Defendant had to demonstrate . . . that 'without the [bailiff's] error there was a reasonable probability of a more favorable result for the defendant.'" (Quoting *State v. Rodriguez*, 2012 UT App 81, ¶ 9, 274 P.3d 1012.) The State presents two arguments in support of its claim that the district court erred in concluding Defendant was prejudiced.[5] The State first argues that "[f]airness to the

---

5. Under the circumstances here, the district court improperly shifted the burden of proof and persuasion to the State to rebut the presumption of prejudice resulting from the inappropriate contact. *See supra* ¶¶ 12–15. But the district court did not simply

(continued…)

jury's truth-seeking process dictated that the jury should have equal access to [the child's] trial testimony upon request." In its second argument, the State contends that "the jury did not ponder [the child's] trial testimony long before reaching its verdict" and therefore the jury's access to that trial testimony could not have influenced its verdict. We are not persuaded that either of these assertions undermines the district court's decision to grant Defendant a new trial.

¶18　Because the jury had unfettered access to the recordings of the CJC Interviews, the State argues that "the trial court was not bound—as the [district] court believed it was—by rules and case law restricting the jury's access to an audio recording of [the child's] trial testimony." This argument is perplexing. The State argues, in essence, that because the jury had access to video recordings of testimonial evidence (i.e., the CJC Interviews), the "truth-seeking process . . . dictated that the jury *also have access* to [the child's] trial testimony," upon request. (Emphasis added.) The State's argument misses the mark. The jury's access to the CJC Interview recording during its deliberations does not render that witness's trial testimony fair game.

¶19　The State acknowledges that, had the trial court allowed the jury to rehear trial testimony, it must nonetheless "ensure 'that [such testimony] is not so selected, nor used in

_____

(…continued)

conclude that the State failed to carry this burden. While the court applied the burden to show prejudice to the wrong party, the district court nevertheless considered the circumstances and concluded that the error—providing recorded trial testimony to the jury—resulted in "a substantial adverse effect on Defendant's rights" to a fair trial. Because the district court concluded that the error was substantial and prejudicial, we affirm its ultimate conclusion despite its burden-shifting error.

such a manner, that there is likelihood of it being given undue weight or emphasis by the jury which would confer an unfair advantage on either party.'" (Quoting *State v. Hines*, 307 P.2d 887, 889 (Utah 1957).) As we have previously noted, the recorded statement of a witness "'is the functional equivalent of a live witness, and can be particularly persuasive.'" *State v. Cruz*, 2016 UT App 234, ¶ 39, 387 P.3d 618 (quoting *State v. A.R.*, 65 A.3d 818, 829 (N.J. 2013)). For this reason, the jury should not have unfettered access to recordings of testimonial evidence during deliberations, but the court—after discussion with counsel, deeming it wise, and pursuant to the rule—may replay the testimony "in open court" allowing "the required record of the replay to be made." *Id.* (quotation simplified).

¶20   Had the trial court here considered the jury's request for evidence and allowed the jury to hear the recording of the witness's testimony, that evidence would have been given to the jury in court and in the presence of Defendant. *See* Utah R. Civ. P. 47(o). This process would have allowed the court to approve and control the jury's access to the testimony, it would have allowed a record to be made of the replay, and the court could have limited the jury's selective consideration of that testimony through appropriate instruction. We are not persuaded that the trial court therefore should have provided the jury unfettered access to the witness's trial testimony because the jury had access to the recordings of the witness's CJC Interviews and could watch and re-watch those recordings at will. In other words, the jury's access to certain testimonial evidence during deliberations does not open the door as a matter of course to its access to other testimonial evidence. *See Cruz*, 2016 UT App 234, ¶ 36 (observing that "the law does not permit depositions or witnesses to go to the jury room. Why should a witness be permitted to go there in the form of [recorded] testimony?" (quotation simplified)).

¶21 Defendant's defense theory of fabrication relied on multiple pieces of evidence. Certainly defense counsel drew the jury's attention to inconsistencies between the children's testimony at trial and their statements in the CJC Interviews. But this information formed only part of the picture. Defendant presented the testimony of two experts who suggested that the witnesses' memories and lack of physical injuries could also support fabrication. The defense highlighted one witness's initial denial of any inappropriate behavior at home, subsequent education about sexual abuse, and her later accusation of sexual abuse. By inappropriately receiving unfettered access to only one piece out of a whole range of testimonial evidence presented, that recorded trial testimony was given undue emphasis.

¶22 The State's second argument focuses primarily on the district court's substantive conclusion that prejudice prevented Defendant from receiving a fair trial. Specifically, the State asserts that the jury's relatively short time with the audio recording meant that "there is little likelihood that the jury would have reached a different result had the jury heard all of [the child's] testimony in open court." The State does not explain, with reasoned analysis and citation to authority, how the brevity of a jury's review of evidence cannot influence its verdict. *See* Utah R. App. P. 24(a)(8). The record does not reflect what part of the recording the jury reviewed, but it suggests that the jury was focused on certain trial testimony and persisted in its requests to obtain it. That testimony was not cumulative of other evidence and it did not support Defendant's defense theory. It included, for example, allegations of sodomy that were not discussed in the CJC Interviews. Additionally, as the district court explained, "the jury may have been persuaded by [the witness's] maturity" and thus could have placed greater weight in the later statement—the trial testimony—of the witness.

¶23 The jury's free access to the witness's recorded trial testimony, even if for only a short period, could have influenced

the jury's decision. Considering Defendant's motion for a new trial, the district court properly concluded that the circumstances established prejudice. Although the district court improperly shifted the burden to the State, it nevertheless determined that the bailiff's provision of testimony to the jury affirmatively and substantially affected Defendant's right to a fair trial. Consequently, we are not persuaded that the district court exceeded its discretion when it granted Defendant's motion for a new trial.

CONCLUSION

¶24   The presumption of prejudice standard applicable to inappropriate contact between a jury and court participants or court personnel does not apply under the circumstances presented here. The district court therefore erred in applying the rebuttable-presumption-of-prejudice standard. While the district court improperly shifted the burden to the State to rebut the presumption of prejudice, it nevertheless properly concluded that the circumstances affirmatively established that Defendant was deprived of his right to a fair trial. The district court therefore did not exceed its discretion when it granted Defendant's motion for a new trial. We affirm.

————————